Jack Silver, Esq. SB #160575
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy. N., #407
Sebastopol, CA 95472-2808
Telephone (707) 528-8175
Email: jsilverenvironmental@gmail.com

David J. Weinsoff, Esq. SB #141372
LAW OFFICE OF DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, CA 94930
Telephone (415) 460-9760
Email: david@weinsofflaw.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit corporation, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF BURBANK, a municipality, <br><br> Defendant. | Case No.: 2:19-cv-07110 <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF** <br><br> (Environmental - Clean Water Act 33 U.S.C. § 1251 *et seq.*) |

Plaintiff CALIFORNIA RIVER WATCH ("RIVER WATCH") hereby brings this

civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean

Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*.

## I.    INTRODUCTION

1.      This action is a citizen suit for injunctive relief, civil penalties, and remediation

brought against Defendant CITY OF BURBANK ('BURBANK") for routinely violating

"an effluent standard or limitation Under this Act"[1] and an order issued by the State with

---

[1] See CWA § 505(a)(1)(A), 33 U.S.C. 1365(a)(1)(A).  "[A]ny citizen may commence a
civil action on his own behalf against any person . . . who is alleged to be in violation of
(A) an effluent standard or limitation under this Act.

1   respect to an effluent quality standard or limitation by discharging a pollutant from a
2   point source to a water of the United States without complying with any other sections
3   of the Act including CWA § 402, 33 U.S.C. § 1342[2].

4   2.      On or about November 3, 2018, RIVER WATCH provided notice BURBANK's
5   violations of the CWA to the (1) Administrator of the United States Environmental
6   Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3)
7   Executive Director of the State Water Resources Control Board ("State Board"), and (4)
8   BURBANK as required by the CWA, 33 U.S.C. § 1365(b)(1)(A).  A true and correct
9   copy of RIVER WATCH's 60-Day Notice of Violations ("Notice") is attached as
10  **EXHIBIT A** and incorporated by reference[3]. BURBANK, the State Board, the Regional
11  and National Administrators of EPA all received this Notice.

12  3.      More than sixty days have passed since RIVER WATCH's Notice was served on
13  BURBANK, the State Board, and the Regional and National EPA Administrators.
14  RIVER WATCH is informed and believes, and thereupon alleges, that neither the EPA
15  nor the State of California has commenced or is diligently prosecuting a court action to
16  redress the violations alleged in this Complaint. This action's claim for civil penalties
17  is not barred by any prior administrative penalty under CWA § 309(g), 33 U.S.C. §
18  1319(g).

19  **II.      JURISDICTION and VENUE**

20  4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
21  § 1331 (federal question), and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The
22  relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief),

23

24
_____

25  [2]See CWA § 301, (a) 33 U.S.C. § 1311(a).  "Except as in compliance with this section
26  and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316,
    1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be
27  unlawful."

28  [3]RIVER WATCH provided an initial Notice on June 13, 2018 and a Supplemental Notice
    on November 13, 2018.

33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

5.      Venue is proper because BURBANK and its discharging collection system are located, and the events or omissions giving rise to RIVER WATCH's claims occurred, in this District. 28 U.S.C. § 1391(b)(1),(2). Venue is also proper because BURBANK's CWA violations have occurred and are occurring within the District. 33 U.S.C. § 1365(c)(1).

### III.     PARTIES

6.      RIVER WATCH is now, and at all times relative to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit Corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and mailing address of 290 S. Main Street, #817, Sebastopol, California 95472. The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and ground waters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, as well as to educate the public concerning environmental issues associated with these environs. Members of RIVER WATCH have interests in the waters and watersheds which are or may be adversely affected by BURBANK's discharges and violations of the CWA as alleged herein. Said members may use the effected waters and watershed areas for recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the like. Furthermore, the relief sought will redress the injury in fact, likelihood of future injury, and interference with the interests of said members.  BURBANK's ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy, or adequate remedy. The relief requested will redress the ongoing injury in fact to RIVER WATCH's members.

7.      RIVER WATCH is informed and believes, and on such information and belief alleges, that defendant BURBANK is now, and at all times relevant to this Complaint

Complaint for Injunctive Relief, Civil Penalties, and Declaratory Relief

1   was, a municipality formed under the laws of the State of California, with administrative

2   offices located at 275 East Olive Avenue, Burbank, California.

3   **IV.    FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS**

4   8.      RIVER WATCH incorporates by reference all the foregoing including **EXHIBIT**

5   **A** as though the same were separately set forth herein.  RIVER WATCH takes this action

6   to ensure compliance with the CWA, which regulates the discharge of pollutants into

7   navigable waters.  The statute is structured in such a way that all discharges of pollutants

8   are prohibited with the exception of enumerated statutory provisions. One such exception

9   authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C.

10  § 1342, to discharge designated pollutants at certain levels subject to certain conditions.

11  The effluent discharge standards or limitations specified in a National Pollutant

12  Discharge Elimination System ("NPDES") permit define the scope of the authorized

13  exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition, such that violation of

14  a permit limit places a discharger in violation of the CWA.

15  9.      The CWA provides that authority to administer the NPDES permitting system in

16  any given state or region can be delegated by the EPA to a state or to a regional

17  regulatory agency, provided that the applicable state or regional regulatory scheme under

18  which the local agency operates satisfies certain criteria (*see* CWA § 402(b), 33 U.S.C.

19  § 1342(b)).  In California, the EPA has granted authorization to a state regulatory

20  apparatus comprised of the State Water Resources Control Board and several subsidiary

21  regional water quality control boards to issue NPDES permits.  The entity responsible

22  for issuing NPDES permits and otherwise regulating BURBANK's operations in the

23  region at issue in this Complaint is the Regional Water Quality Control Board, Los

24  Angeles Region ("RWQCB").

25  10.     While delegating authority to administer the NPDES permitting system, the CWA

26  provides that enforcement of permitting requirements under the statute relating to

27  effluent standards or limitations imposed by the Regional Boards can be ensured by

28  private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33

4

U.S.C. § 1365). RIVER WATCH is exercising such citizen enforcement to enforce compliance by BURBANK with the CWA.

11.    RIVER WATCH has identified discharges of sewage from BURBANK's sewage collection system to waters of the United States in violation of CWA § 301(a), 33 U.S.C. 1311(a), which states in relevant part, "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

12.    RIVER WATCH has also identified numerous violations of orders issued by the State with respect to a standard or limitation (*see* CWA §505(a), 33 U.S.C. § 1365(a), specifically:

NPDES Permit No. CA0055531 - *Waste Discharge Requirements for the City of Burbank Water Reclamation Plant* - RIVER WATCH identifies specific violations of BURBANK's NPDES permit including raw sewage discharges. These alleged discharges are violations of BURBANK's NPDES Permit, which states in Section III. Discharge Prohibitions:

A.    "Discharge of wastewater at a location different from that described in this Order is prohibited.

B.    The bypass or overflow of untreated wastewater or wastes to surface waters or surface water drainage courses is prohibited, except as allowed in Standard Provision I.G. of Attachment D, Standard Provisions.

C.    The Permittee shall not cause degradation of any water supply, except as consistent with State Water Board Resolution No. 68-16."

NPDES Permit No. CAS004001 - *Los Angeles County Municipal Separate Storm Sewer System (MS4) Permit ("MS4")*, governing the municipal discharges of storm water and non-storm water by the Los Angeles County Flood Control District, the County of Los Angeles, and

84 incorporated cities (including BURBANK) within the coastal watersheds of Los Angeles County. The MS4 states in relevant part:

"Each Permittee shall, for the portion of the MS4 for which it is an owner or operator, prohibit non-storm water discharges through the MS4 to receiving waters [with specific exceptions]" (*see* Section III.A. "*Discharge Prohibitions*").

"Discharges from the MS4 that cause or contribute to the violation of receiving water limitations are prohibited"; and "Discharges from the MS4 of storm water, or non-storm water, for which a Permittee is responsible, shall not cause or contribute to a condition of nuisance" (*see* Section V.A.1. and 2. "*Receiving Water Limitations*").

13.    RIVER WATCH contends that from June 13, 2013 (the date of the initial Notice) through November 30, 2018 (the date of the Supplemental Notice), BURBANK has violated the Act as described in the Supplemental Notice. RIVER WATCH contends these violations are continuing or have a likelihood of occurring in the future. The location or locations of the various violations alleged in the Supplemental Notice are identified in records created and/or maintained by or for BURBANK which relate to the ownership and operation of sewer collection system and outfalls as described in the Supplemental Notice.  The violations alleged in the Supplemental Notice include the following:

a.    <u>Collection system surface discharges caused by sanitary sewer overflows.</u> Sanitary Sewer Overflows ("SSOs"), in which untreated sewage is discharged above ground from the collection system prior to reaching BURBANK's Water Reclamation Plant, are alleged to have occurred both on the dates identified in California Integrated Water Quality System ("CIWQS") Interactive Public SSO Reports and on the dates when no reports were filed with CIWQS by BURBANK, all in violation of the CWA.

BURBANK's aging sewer collection system has historically experienced high inflow and infiltration ("I/I") during wet weather. Structural defects which allow I/I into the sewer lines result in a buildup of pressure, causing SSOs. Overflows caused by

blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains which are connected to adjacent surface waters including the Burbank Western Channel and the Los Angeles River. All of the waterways lead to the Pacific Ocean, and all are waters of the United States.

A review of the CIWQS Spill Public Report – Summary Page, identifies the "Total Number of SSO locations" as 78, with 187,746 "Total Vol. of SSOs (gal)" discharged into the environment. Of this total volume, 94,167 gallons or just 50% are reported as being recovered while BURBANK admits at least 58,791 gallons, or approximately 31% of the total, reached a surface water. This discharge poses both a nuisance pursuant to California Water Code § 13050(m) and an imminent and substantial endangerment to health and the environment.

A review of the CIWQS SSO Reporting Program Database specifically identifies 5 recent SSOs reported as having reached a water of the United States, identified by Event ID numbers 827055, 823882, 823548, 814489, and 805790. All of the reported violations lack detailed information of the effects and explanation of spill. <u>Examples</u> of the alleged violations included in the list of CIWQS-reported SSOs are:

August 04, 2016 (Event ID# 827055) – an SSO estimated at 380 gallons occurred at 536 East University (Coordinates 34.19491 -118.31698). The cause of the spill was root intrusion. Of this amount, 300 gallons are reported as having been recovered, 330 gallons as reaching land, while 50 gallons are reported as reaching the Burbank Western Channel. For item "36 – Health Warnings posted" BURBANK reports "No." For item "41 – Explanation of water quality samples analyzed for" BURBANK, contradicting its report, states "Due to the limited amount of flow, the sewer spill did not reach receiving waters and was contained in the storm drain system."

April 14, 2016 (Event ID # 823882) – an SSO estimated at 4,684 gallons occurred at Beachwood and Riverside (Coordinates 34.15761 -118.31597). BURBANK reports 4,684 gallons reached a surface water. The cause of the spill was a power

outage due to winds. For item "36 – Health warnings posted," BURBANK reported "No."

April 27, 2014 (Event ID # 805790) – an SSO estimated at 54,344 gallons occurred in the 400 block of North Beachwood Drive (Coordinates 34.174167 - 118.323889). The cause of the spill is reported as an 18-inch force main rupture. Of the total estimated volume, 34,275 gallons are reported as reaching land, and 20,069 gallons are reported as reaching the Los Angeles River. For item "36 – Health warnings posted" BURBANK reports "No."

All of the above-identified discharges are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as discharges of a pollutant (sewage) from a point source (sewer collection system) to a water of the United States without complying with any other sections of the Act.  Further, as stated above, these alleged discharges are violations of BURBANK's NPDES Permit, Section III. Discharge Prohibitions. RIVER WATCH contends these violations are continuing in nature or have a likelihood of occurring in the future.

b.      Inadequate Reporting of Discharges. Full and complete reporting of SSOs is essential to gauging their impact upon public health and the environment. BURBANK's SSO Reports, which should reveal critical details about each of these SSOs (including which SSOs reach which specific surface water), lack responses to specific questions that would present sufficient information to accurately assess and ensure these violations would not recur.

In addition, RIVER WATCH's expert believes many of the SSOs reported as not reaching a surface water did in fact reach surface waters, and those reported as reaching surface waters did so in greater volume than stated. RIVER WATCH's expert also believes that a careful reading of the time when the SSO began, the time BURBANK received notification of the SSO, the time of its response, and the time at which the SSO ended, appear as unlikely estimations. Examples of the alleged violations included in this list of CIWQS-reported SSOs are:

Complaint for Injunctive Relief, Civil Penalties, and Declaratory Relief

<u>October 14, 2016 (Event ID #823882)</u> – the spill start time is reported as 11:15 pm, agency notification time is reported as 1:45 am the following day, operator arrival time as 2:10 am, and spill end time as 1:45 am. The report filed asserts the spill ended upon notification. The estimated total volume of spill is 4,684 gallons, all of which are reported as reaching the Los Angeles River.

land, and 1,600 are reported as having reached the Burbank Western Channel.

<u>March 30, 2016 (Event ID #823548)</u> – the spill start time is reported as 8:36 am, agency notification time is reported as 8:43 am, while the operator arrival time is reported as 8:47 am. The spill end time is reported as 9:04 am. The estimated total volume of spill is 2,100 gallons, 500 of which are reported as recovered, while 500 gallons are reported as reaching land, and 1,600 are reported as having reached the Burbank Western Channel.

<u>April 08, 2015 (Event ID #814489)</u> – the spill start time and agency notification time are both reported as 8:07 am. The operator arrival time is reported as 8:21 am, and spill end time is reported as 8:22 am (1 minute after arrival). The estimated total volume of the spill, recovered amount, and amount having reached land are all reported as 1,734 gallons.

Given the inconsistent accuracy of the times and intervals provided in these reports, it is difficult to consider the stated volumes as accurate. Without correctly reporting the spill start and notification times, and by inaccurately reporting the operator arrival time and spill end time, there is a danger that the duration and volume of a spill will be underestimated.

c.    <u>Failure to Warn</u>. There is no indication that BURBANK posts warning signs for any SSOs that presumably reach a surface water. RIVER WATCH contends BURBANK is understating the significance of the impacts of its CWA violations by failing to post health warning signs for any SSOs which pose an imminent and substantial endangerment to health or the environment regardless of location.

Complaint for Injunctive Relief, Civil Penalties, and Declaratory Relief

d.      <u>Failure to Mitigate Impacts</u>. RIVER WATCH contends BURBANK fails to adequately mitigate the impacts of its SSOs. BURBANK is a permittee under the *Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements* Order No. 2006-0003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems. The Statewide WDR requires BURBANK to take all feasible steps and perform necessary remedial actions following the occurrence of an SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible. Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site.

A critical remedial measure is the performance of adequate sampling to determine the nature and impact of the release. As BURBANK is inconsistently underestimating SSOs which reach surface waters, RIVER WATCH contends BURBANK is not conducting samples on many SSOs as required by the Statewide WDR.

The EPA's "*Report to Congress on the Impacts and Control of CSOs and SSOs*" (U.S. EPA, Office of Water (2004)) identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. Numerous biological habitat areas exist within areas of the SSOs. Neighboring waterways include sensitive areas for the American White Pelican, Double Crested Cormorant, Osprey, Northern Harrier, Sharp-shinned Hawk, Merlin, California Gull, Vaux's Swift, Loggerhead Shrike, Yellow Warble, Yellow-breasted Chat, Tri-colored Blackbird, Least Bittern, White-faced Ibis, Golden Eagle, Prairie Falcon, Long-billed Curlew, Burrowing Owl, Vermillion Flycatcher, California Horned Lark, and Summer Tanager. RIVER WATCH finds no recent record of BURBANK performing any analysis of the impact of SSOs on the habitat of protected species under the ESA, nor any evaluation of the measures needed to restore water bodies containing designated as critical habitat from the impacts of SSOs.

e.      Failure to Eliminate Sewer Collection System Subsurface Discharges Caused by Underground Exfiltration. It is a well-established fact that exfiltration caused by structural defects in a sewer collection system results in discharges to adjacent surface waters either directly or via underground hydrological connections. Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent waters with untreated sewage.

RIVER WATCH contends untreated or partially treated sewage is discharged from BURBANK's collection system either directly or via hydrologically-connected groundwater to surface waters including the Burbank Western Channel and the Los Angeles River, all which lead to the Pacific Ocean. Surface waters then become contaminated with pollutants, including human pathogens. Chronic failures in the collection system pose a substantial threat to public health. Evidence of exfiltration can also be supported by reviewing mass balance data, I/I data, video inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. Any exfiltration found is a violation of BURBANK's NPDES permit and thus a violation of the CWA.

f.      Failure to Comply with the Municipal Separate Storm Sewer System (MS4) Stormwater Permit. The BURBANK's MS4 is a system of conveyances intended to carry stormwater. It is connected to storm drain pipes which discharge neighboring surface waters. However, SSOs bring sewage into the MS4 and in turn into waterways connected to, and downstream of, the MS4. RIVER WATCH contends BURBANK fails to adequately comply with the discharge prohibitions of its MS4 Permit as stated above.

All SSOs which reach a storm drain or storm drain conveyance are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as they are discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States, without complying with any other sections of the Act.

Complaint for Injunctive Relief, Civil Penalties, and Declaratory Relief

RIVER WATCH contends these violations are continuing in nature or have a likelihood of occurring in the future. In addition, all of these discharges pose both a nuisance pursuant to California Water Code § 13050(m), and an imminent and substantial endangerment to human health and the environment.

g.    Failure to Eliminate Unpermitted Discharges. Multiple sources of pollution generated through activities in the City of Burbank, vehicular traffic, and sewage and garbage, make their way to BURBANK's system of storm drains connected to the Los Angeles River and the Burbank Western Channel. Results from recent sampling tests indicate non- stormwater discharges of pollutants from the BURBANK's outfalls exceed water quality standards. RIVER WATCH's ongoing investigation indicates a lack of any structural Best Management Practices in place at these outfalls to prevent maintenance waters from coming into contact with pollutant sources and/or water treatment measures to prevent contaminants from being discharged without treatment in or around the storm drains.

Under EPA regulations, water quality standard based provisions are required in NPDES permits to protect the beneficial uses of water. 40 C.F.R. § 122.44(d). The RWQCB has identified beneficial uses of the Los Angeles River region's waters and has established water quality standards for the Los Angeles basin. The beneficial uses of these waters include, among others, contact and non-contact recreation. The non-contact recreation use is defined as use of water for recreational activities involving proximity to water, but not normally involving contact where water ingestion would be reasonably possible such as picnicking, sunbathing, hiking, camping, boating, hunting, sightseeing, or aesthetic enjoyment in conjunction with those activities. Water quality considerations relevant to hiking, camping, boating, and activities related to nature studies, require protection of habitats and aesthetic features.

The Basin Plan includes a narrative toxicity standard which states that all waters shall be maintained free of toxic substances in concentrations that are lethal or that produce other detrimental responses in aquatic organisms. The Basin Plan includes a narrative oil

1  and grease standard which states that waters shall not contain oils, greases, waxes, or

2  other materials in concentrations that result in a visible film or coating on the surface of

3  the water or on objects in the water, that cause nuisance, or otherwise adversely affect

4  beneficial uses. The Basin Plan establishes Water Quality Objectives for toxic metals

5  such as copper, nickel, and zinc.

6      The EPA adopted the National Toxics Rule on February 5, 1993 and the California

7  Toxics Rule on May 18, 2000. When combined with the beneficial use designations in the

8  Basin Plan, these Rules contain water quality standards applicable to the discharges of

9  pollutants by BURBANK identified in the Supplemental Notice. The SWRCB adopted

10  the *Policy for Implementation of Toxics Standards for Inland Surface Waters, Enclosed*

11  *Bays, and Estuaries of California* on April 26, 2000, containing requirements for

12  implementation of both the National Toxics Rule and California Toxics Rule.

13      h.  <u>Impacts to Beneficial Uses from SSOs and Direct Discharges</u>.  The aquatic

14  environment of the Los Angeles River has numerous beneficial uses as set forth in the

15  RWQCB-LA's Basin Plan including groundwater recharge, water contact recreation,

16  warm freshwater habitat, wildlife habitat, wetland habitat, marine habitat, and rare,

17  threatened, or endangered species. The Los Angeles River, Burbank Western Channel,

18  and Pacific Ocean contain sensitive species and support important recreational value.

19      The Los Angeles River stretches approximately 51 miles from Canoga Park in the

20  western end of the San Fernando Valley to Long Beach, southeast. Two channelized

21  streams, Bell Creek and Arroyo Calabasas, come together in the Canoga Park section of

22  Los Angeles at the head of the River which flows east past Burbank and curves around

23  Griffith Park before lowing south to the Pacific Ocean at Long Beach.

24      The Los Angeles River watershed includes 3 regionally significant ecological areas:

25  the Santa Monica Mountains, Verdugo Mountains, and Griffith Park. It is one of largest

26  watersheds in the region at 824 square miles.

27      The Los Angeles River was channelized by the Army Corps of Engineers beginning

28  in 1938 after several devastating floods, providing flood control for the growing City of

Los Angeles and a consistent path for the course of the River. Fed primarily by rainwater, snow melt, and urban discharge, the River is one of the few perennial rivers in Southern California. The concrete channel helps limit absorption of water into the earth. There has been flow every month since recording of the stream flow began in 1929, even the driest months. Although no native species of fish survived the channelization in 1938, the Los Angeles River is home to many fish species including common carp, largemouth bass, tilapia, Amazon Sailfin, channel catfish, fathead minnow, and crayfish.

Bird species of special concern relying on the Los Angeles River include the American White Pelican, Double Crested Cormorant, Osprey, red tailed hawk, Northern Harrier, Sharp-shinned Hawk, American coot, snowy, great egret, Merlin, great blue heron, California Gull, Vaux's Swift, Loggerhead Shrike, Yellow Warble, Yellow-breasted Chat, Tri-colored Blackbird, and the Mallard. More rarely seen species include the Least Bittern, White-faced Ibis, Golden Eagle, Prairie Falcon, Long-billed Curlew, Burrowing Owl, Vermillion Flycatcher, California Horned Lark, and Summer Tanager. Riparian habitat is impaired by degraded water quality resulting from increases in water temperature, sediment and nutrients, pesticides, and heavy metals.

**V.    STATUTORY AND REGULATORY BACKGROUND**

14.    CWA § 301(a), 33 U.S.C. § 1311(a) prohibits discharges of pollutants or activities not authorized by, or in violation of, an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations, and other regulations promulgated by the EPA and the State Water Resources Control Board. Sewage is specifically identified in the CWA as a pollutant. The sewer lines and storm water system owned by BURBANK are point sources under the CWA.

15.    The affected waterways detailed in this Complaint and in the Notice are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

16.    The Administrator of the EPA has authorized Regional Water Quality Control Boards to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

17.    BURBANK is not in possession of an NPDES Permit authorizing it to discharge pollutants into navigable waters of the United States within the meaning of the CWA.

18.    The Code of Federal Regulations Title 40 Section 122.41 (40 CFR § 122.41) includes conditions or provisions that apply to all NPDES permits. Additional provisions applicable to NPDES permits are found in 40 CFR § 122.42. All applicable provisions in 40 CFR § 122.41 and 40 CFR § 122.42 are incorporated in BURBANK's MS4. BURBANK must comply with all of the provisions. Pursuant to 40 CFR § 122.41 any permit non-compliance constitutes a violation of the CWA.

## VI.    VIOLATIONS

19.    BURBANK's unpermitted discharges of untreated sewage from its sewage collection system as detailed herein and in the Notice are violations of CWA § 301(a), 33 U.S.C. § 1311(a).  The violations are established in RWQCB files for BURBANK's sewage collection system as well as in studies conducted by BURBANK in compliance with orders from regulatory agencies.

20.    The enumerated violations are detailed in the Notice, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

## VII.    FIRST CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(A), 33 U.S.C. § 1365(a)(1)(A) - Violation of an effluent standard or limitation under the Act - Discharges of a Pollutant From a Point Source to Navigable Waters of the United States not in Compliance with the Act**

21.    RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 20, including EXHIBIT A, as though fully set forth herein.

22.    BURBANK has violated and continues to violate the CWA as evidenced by the

15

discharges of pollutants (raw sewage) from a point source (the sewer lines and storm water collection system) to waters of the United States in violation of CWA § 301(a), 33 U.S.C. § 1311(a).

23.     BURBANK has self-reported and certified under oath as to SSOs reaching a water of the United States, as evidenced in CIWQS and its own records. As listed in CIWQS, the event ID number of those violations are identified herein and in the Notice.

24.     All discharges identified herein are violations of CWA § 301(a), 33 U.S.C. 1311(a) in that they are discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.

**VIII.  SECOND CLAIM FOR RELIEF**

       **Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of NPDES No. CA0055531 – Failure to Prohibit Non-storm Water Discharges into the MS4 and Watercourses**

25.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 24 including **EXHIBIT A**, as though fully set forth herein.

26.     BURBANK has self-reported and certified under oath as to its non-storm water discharges into the MS4 and waters of the United States, as evidenced in CIWQS and the records of BURBANK.

27.     Sewage is a pollutant under the CWA. In its report to Congress, the EPA determined that SSOs cause a condition of pollution, contamination, or nuisance in receiving waters.[4]

**IX.    THIRD CLAIM FOR RELIEF**

       **Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of NPDES. No. CAS004001 – Discharges from the MS4 That Cause or Contribute to the Violation of Receiving Water Limitations Are Prohibited**

___

[4]EPA Impacts and Controls of CSOs and SSOs, dated August 2004 Report #833-R-04-001).

28.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 27 including **EXHIBIT A**, as though fully set forth herein.

29.     BURBANK has certified under oath as to SSOs that have violated Discharge Prohibitions identified herein and in the Notice by discharging from its MS4 in such a manner as to cause or contribute to a violation of receiving water limitations.

**X.      FOURTH CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of NPDES. No. CAS004001– Discharges from the MS4 of Storm Water, or Non-Storm Water, for Which a Permittee Is Responsible, Shall Not Cause or Contribute to a Condition of Nuisance**

30.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 29 including **EXHIBIT A**, as though fully set forth herein.

31.     As described herein and in the Notice, BURBANK is discharging from its MS4 stormwater and/or non-stormwater which is causing or contributing to a condition of nuisance.

32.     The violations of BURBANK as set forth in all Claims For Relief are ongoing and will continue after the filing of this Complaint. RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by BURBANK to the RWQCB. Each of BURBANK's violations is a separate violation of the CWA.

33.     RIVER WATCH avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, BURBANK will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases. RIVER WATCH avers and believes and on such belief alleges that the relief requested in this Complaint will redress the injury to RIVER WATCH's members, prevent future injury, and protect the interests of RIVER

1   WATCH's members which are or may be adversely affected by BURBANK's violations

2   of the CWA, as well as other State and Federal standards.

3   **XI.    RELIEF REQUESTED**

4         WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

5   34.   Declare BURBANK to have violated and to be in violation of the CWA.

6   35.   Issue an injunction ordering BURBANK to immediately operate its sewage

7         collection system in compliance with the CWA.

8   36.   Order BURBANK to pay civil penalties of $54,833.00 per violation/per day for

9         its violations of the CWA.

10  37.   Order BURBANK to pay reasonable attorneys' fees and costs of RIVER WATCH

11        (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. §

12        1365(d).

13  38.   For such other and further relief as the court deems just and proper.

15  DATED: August 14, 2019          LAW OFFICE OF JACK SILVER

17                                  By:  ___/s/ Jack Silver_____
                                             Jack Silver

18  DATED: August 14, 2019          LAW OFFICE OF DAVID J. WEINSOFF

20                                  By:  ___/s/ David J. Weinsoff_____
                                             David J. Weinsoff

21                                  Attorneys for Plaintiff
22                                  CALIFORNIA RIVER WATCH

18

Complaint for Injunctive Relief, Civil Penalties, and Declaratory Relief