Jack Silver, Esq. (State Bar No. 160575)
LAW OFFICE OF JACK SILVER
708 Gravenstein Highway North, Suite 407
Sebastopol, CA 95472-2808
Telephone: (707) 528-8175
Email: jsilverenvironmental@gmail.com

David J. Weinsoff, Esq. (State Bar No. 141372)
LAW OFFICE OF DAVID WEINSOFF
138 Ridgeway Avenue
Fairfax, CA 94930
Telephone: (415) 460-9760
Email: david@weinsofflaw.com

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH

*Defendant's Counsel Listed On Next Page*

FILED
CLERK, U.S. DISTRICT COURT

OCT 15 2019

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BURBANK, a municipality,<br><br>    Defendant. | Case No. 2:19-cv-07110-SVW-PJW<br><br>[PROPOSED] CONSENT DECREE AND ORDER<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.) |

*Defendant's Counsel*

CITY OF BURBANK
Amelia Ann Albano, City Attorney (State Bar No. 103640)
Christopher Chwang, Sr. Asst. City Attorney (State Bar No. 210700)
275 E. Olive Avenue
Burbank, CA 91502
Tel: (818) 238-5707
Fax: (818) 238-5724
Email: AAlbano@burbankca.gov
        CChwang@burbankca.gov

S. Wayne Rosenbaum (State Bar No. 182456)
ENVIRONMENTAL LAW GROUP, LLP
Varco & Rosenbaum
225 Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-5858
Fax: (619) 231-5853
E-mail: swr@envirolawyer.com

Attorneys for Defendant
CITY OF BURBANK

1    The following [Proposed] Consent Decree is entered into by and between
2    Plaintiff California River Watch ("Plaintiff" or "River Watch" or "CRW") and
3    Defendant City of Burbank ("Defendant" or "Burbank" or "City"). The entities
4    entering into this Consent Decree are each an individual "Settling Party" and
5    collectively the "Settling Parties."

6                                **RECITALS**

7        **WHEREAS,** Plaintiff California River Watch is an Internal Revenue Code §
8    501(c)(3) non-profit, public benefit corporation organized under the laws of the
9    State of California, with headquarters located in Sebastopol, California. The
10   mailing address of River Watch's office is 290 S. Main Street, #817, Sebastopol,
11   CA 95472. CRW is dedicated to protecting, enhancing, and helping to restore
12   surface and ground waters of California, including rivers, creeks, streams,
13   wetlands, vernal pools, aquifers and associated environs, biota, flora, and fauna,
14   and educating the public concerning environmental issues associated with these
15   environs;

16       **WHEREAS,** Burbank is a California municipal corporation located in the
17   eastern San Fernando Valley, nestled between the Hollywood Hills and the
18   Verdugo Mountains, encompassing 17 square miles with a diverse population of
19   approximately 103,000;

20       **WHEREAS,** The City is organized under the laws of the State of California,
21   and owns and operates a sanitary sewer collection system for the purpose of
22   collecting and conveying to the Burbank Water Reclamation Plant ("BWRP") to
23   treat wastewater from residential, commercial, and industrial sources, subject to
24   NPDES Permit No. CA0055531 issued under the federal Clean Water Act
25   ("CWA");

26       **WHEREAS,** The City has also been enrolled under the Statewide General
27   Waste Discharge Requirements for Sanitary Sewer Systems ("Statewide WDR"),
28

---

State Water Resources Control Board ("SWRCB") Order No. 2006-003-DWQ
since the Statewide WDR's adoption in May 2006;

**WHEREAS,** Burbank is committed to complying with all environmental
laws and regulations, while also recognizing the importance of conservation and
environmental protection;

**WHEREAS,** River Watch members live, use, and/or recreate in and around
those portions of the Los Angeles River in the City and the Burbank Western
Channel;

**WHEREAS,** on or about June 13, 2018, River Watch provided the City, the
United States Environmental Protection Agency ("EPA"), EPA Region IX, and the
SWRCB with a 60-day Notice of Violations and Intent to File Suit under CWA, 33
U.S.C. § 1365, and on November 30, 2018 served the City with a Supplemental
Notice Letter (collectively "Notice Letters") alleging various violations of the
CWA relating to the collection system and unpermitted discharges to the Los
Angeles River and the Burbank Western Channel. Copies of the Notice Letters are
attached to this Consent Judgement as Exhibit A;

**WHEREAS,** on August 15, 2019, River Watch filed a complaint against the City
in the United States District Court, Central District of California, Case No. 2:19-
cv-07110-SVW-PJW, alleging violations of substantive and procedural
requirements of the CWA;

**WHEREAS,** Burbank denies all allegations set forth in the Notice Letters
and CWA Complaint;

**WHEREAS,** the Settling Parties have agreed that it is in the Parties' mutual
interest to enter into a Consent Decree setting forth the terms and conditions
appropriate for resolving River Watch's allegations set forth in the CWA
Complaint and Notice Letters without further proceedings; and have consented to
the entry of this [Proposed] Consent Decree and Order without trial of any issues,
and hereby stipulate that, in order to settle the claims alleged by River Watch

[PROPOSED] CONSENT DECREE & ORDER          2:19-cv-07110-SVW-PJW

against the City in the CWA Notice Letters and CWA Complaint this [Proposed] Consent Decree should be entered; and,

**WHEREAS,** all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

**CONSENT DECREE**

The above recitals are incorporated into and shall become part of this Consent Decree.

**I.   JURISDICTION & VENUE**

**1.**   The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

**2.**   Venue is proper in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the location at which the alleged violations took place is located within this District;

**3.**   The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

**4.**   Plaintiff has standing to bring this action;

**5.**   The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**II.   OBJECTIVES**

**6.**   It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by River Watch in its Complaint.

[PROPOSED] CONSENT DECREE & ORDER                    2:19-cv-07110-SVW-PJW

In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Statewide WDR and the BWRP NPDES Permit.

### III.   **COMMITMENTS OF THE CITY OF BURBANK**

**7.**     In order to reduce or prevent pollutants associated with the City's Sanitary Sewer System from discharging to the Los Angeles River and the Burbank Western Channel, Burbank shall implement appropriate structural and non-structural BMPs, as described more fully below.

**8.**   **Sewer Collection System Operation and Maintenance**

    **a.**   **Definitions**

        **i.**     **California Integrated Water Quality System ("CIWQS"):** A computer system used by the State and Regional Water Quality Control Boards to track information about places of environmental interest, manage permits and other orders, track inspections, and manage violations and enforcement activities.

        **ii.**     **City Pipeline Rating System ("CPRS"):** A customized rating system specifically designed by the City to create a Condition Assessment based on the unique aspects of the City's Collection System and achieve the same goals as other rating systems including the Pipeline Assessment and Certification Program ("PACP") rating system, developed by the National Association of Sewer Service Companies.

        **iii.**     **Collection System:** A system of pipes, sewer lines, or other conveyances owned by the City and located within the City's boundary that are used to collect and convey wastewater to the Plant, excluding sanitary sewer laterals.

        **iv.**     **Collection System Sanitary Sewer Overflow ("Collection System SSO" or "SSO"):** A condition in which untreated sewage is

discharged from a Collection System sanitary sewer into the environment prior to reaching sewage treatment facilities.

**v.** **Condition Assessment:** A report that comprises inspection, rating, and evaluation of the existing condition of a subject sewer line, manhole or pipe connection that is part of the Collection System. Inspection is based upon closed circuit television ("CCTV") inspections for sewer lines; manhole inspections for structural defects; and inspections of pipe connections at the manhole. After CCTV inspection occurs, pipe conditions are assigned a grade based on the CPRS.

**vi.** **Condition Assessment Cycle:** A Condition Assessment Cycle occurs when a sewer line required to undergo CCTV inspection shall have had a Condition Assessment as described in Paragraph 8.a.v within a ten (10) year cycle; provided that not all sewer lines must be on the same CCTV inspection schedule.

**vii.** **Integrated Pest Management (IPM):** An ecosystem-based strategy that focuses on long-term prevention of pests or their damage through a combination of techniques such as biological control, habitat manipulation, modification of cultural practices, and use of resistant varieties. Pesticides are used only after monitoring indicates they are needed according to established guidelines, and treatments are made with the goal of removing only the target organism. Pest control materials are selected and applied in a manner that minimizes risks to human health, beneficial and non-target organisms, and the environment.

**viii.** **Qualifying Event:** Any Collection System SSO that may present an imminent and substantial endangerment to health or the environment regardless of size or whether the Collection System SSO

is discharged to land or water. The determination of whether an event is a Qualifying Event must be documented in writing by a person qualified to make that determination. Qualified persons include, but are not limited to, qualified City Staff or qualified City consultants

**ix.** **Sewer System Management Plan ("SSMP"):** A plan and schedule in conformity with SWRCB Order No. 2006-0003 for measures to be implemented to reduce the frequency and volume of Collection System SSOs, as well as measures to effectively clean up and report Collection System SSOs.

**x.** **Significantly Defective:** A Collection System component is considered to be Significantly Defective if its condition receives a Structural or Operation and Maintenance grade of 4 or 5 based on the CPRS.

**xi.** **Surface Waters:** Those bodies of water named on the United States Geological Service (USGS), 7-1/2-minute quadrangle map for the City of Burbank, California: specifically, the Los Angeles River and the Burbank Western Channel.

**b.** Within sixty (60) days after the Effective Date, the City will prepare and publish its CPRS on its website.

**c.** Within nine (9) months after the Effective Date, the City will update and publish its certified SSMP on its website and upload it to CIWQS.

**d.** Within three (3) years after the publication of the CPRS, the City shall complete a Condition Assessment of sewer lines in the City's Collection System excluding force mains located within two hundred (200) feet of a Surface Water.

**e.** If a sewer line or manhole located within two hundred (200) feet of a Surface Water is determined to be Significantly Defective, the City shall, upon securing any necessary permit(s), repair or replace the sewer line or

manhole within three (3) years.

**f.**     Within seven (7) years after the publication of the CPRS, the City shall complete a Condition Assessment of sewer lines other than force mains in the City's Collection System located at a distance greater than two hundred (200) feet from a Surface Water.

**g.**     If a sewer line or manhole located at a distance greater than two hundred (200) feet of a Surface Water is determined to be Significantly Defective the City shall, upon securing all necessary permit(s), repair or replace the sewer line or manhole within three (3) years.

**h.**     Within seven (7) years after a sewer line or manhole is determined to be less than Significantly Defective but with a CPRS rating of three (3) based on the Condition Assessment, the City shall repair or replace such gravity sewer lines and/or manholes, or take other appropriate action for such gravity sewer pipe segments containing defects with a rating of three (3) or less under the CPRS if such defect resulted in a Collection System SSO or, if in the City's discretion, such defects are in close proximity to Significantly Defective segments that are in the process of being repaired or replaced.

**i.**     Sewer pipe segments which contain defects with a rating of three (3) or less under the CPRS that are not repaired or replaced within seven (7) years after completion of the Condition Assessment are to be re-inspected with CCTV in accordance with the applicable Condition Assessment Cycle for such segment to ascertain the condition of the sewer line segment. If the City determines that a sewer pipe segment with a rating of three (3) or less under the CPRS has deteriorated and needs to be repaired or replaced, the City, upon securing necessary permit(s) and/or rights of way shall complete such repair or replacement within three (3) years after the last CCTV cycle.

**j.**     The City shall re-inspect all sewer lines, manholes, and segments

1    based on the Condition Assessment Cycle established by the City.

2    **9.    SSO Reporting and Response**

3        **a.    The City shall continue to comply with all training, reporting, and
4    response actions set forth in the State and Federal permits, and regulatory
5    and legislative requirements imposed by the various agencies having
6    jurisdiction over the City's waste water collection, conveyance, and
7    treatment system and the City shall continue to provide the following
8    information to the CIWQS State Reporting System:

9            **i.    The method or calculations, and the actual calculations, used
10           for estimating total spill volume, spill volume that reached surface
11           waters, and spill volume recovered as approved by the State Water
12           Resources Control Board and Sanitary Sewer collection industry (e.g.,
13           the California Water Environmental Association/Southern Collection
14           System Committee), as applicable;

15           **ii.    For Category I and II Spills as defined in the Statewide WDR, a
16           good faith effort to ascertain an accurate estimate of the start time of
17           the Collection System SSO based upon direct observation and witness
18           inquiry where the observer or witness can be reasonably identified by
19           City Staff or City representatives rather than setting the start time of
20           the Collection System SSO as the time the call was received or the
21           Collection System SSO was reported; and

22           **iii.    When reasonably feasible and without interfering with the
23           immediate goal of addressing the obstruction and returning sewage to
24           the system, taking of photographs of the manhole flow at the
25           Collection System SSO site using either the San Diego or Central
26           Coast Method array, if applicable to the Collection System SSO, or
27           other photographic evidence that may aid in establishing the spill
28           volume.

**b.** The City shall continue its full compliance with its legal obligation under the Statewide WDR.

    **i.** Compliance with the Statewide WDR includes, but is not limited to, making updates to the City's SSMP, and complying with the requirements in Section D.7.v. to develop and implement an adequate spill response training and sampling program to determine the nature and impact of all Collection System SSOs. The City has a certified SSMP on file with the Regional Water Quality Control Board – LA Region ("RWQCB-LA") and it can be retrieved through the State's CIWQS system. Cleanup and disinfection procedures are set forth in the certified SSMP. The City is currently updating its certified SSMP and will complete the updates to include the relevant requirements of this Consent Decree and the following cleanup and disinfection procedures associated with a Collection System SSO event, to include the following within nine (9) months after the Effective Date:

        **(a)** Sampling for E. coli and ammonia shall be conducted for any "Qualifying Event." pursuant to SWRCB Bacteria Provisions and a Water Quality Standards Variance Policy dated August 7, 2018.

        **(b)** In the event the City cannot confirm that specific pathogens or human markers from a "Qualifying Event" have been removed or mitigated, where feasible and when weather or

other conditions allow City Staff or City representatives to safely do so, and at the direction of the appropriate agency with authority to direct the placement of warning signs, the City shall notify the appropriate responsible jurisdiction or agency to post and maintain appropriate public notification signs and place barricades to keep vehicle and pedestrians away from contact with spilled sewage.

c.    Water quality sampling and testing is required when a Qualifying Event occurs to determine the extent and impact of the Collection System SSO whenever there is a Collection System SSO that either enters a Surface Water or is discharged to a surface where it poses a risk to public health or the environment.

i.    After the City determines that there has been a Qualifying Event, the City shall than proceed to collect sample(s) where feasible or if required by the SWRCB or RWQCB-LA. Samples should be collected as soon as reasonably possible after the discovery of the Qualifying Event. Feasibility for obtaining a sample depends on, but is not limited to, whether sufficient flow exists to collect a representative sample. Feasibility will also include considerations of when weather, sampling site access or other conditions allowing City Staff or City representatives to safely obtain a sample, and laboratory availability considering sample hold times. City Staff or City representatives will not be placed at risk for injury.

ii.    In the event that a Qualifying Event occurs, City Staff or City representatives shall collect and test samples from three (3) locations, if feasible and the conditions are not unsafe - the point of discharge,

1  upstream of the point of discharge, and downstream of the point of
2  discharge. Constituents to be tested for are E. coli and ammonia.
3  Water quality sample results shall be reported in an appropriate
4  category on the CIWQS reporting form or as required by the SWRCB.
5  Any requirements under this provision which conflict with sampling
6  or testing requirements by a regulatory agency (e.g., the sampling
7  location, frequency, parameters analyzed), either currently in effect or
8  adopted in the future, shall cease to be in effect under this Consent
9  Decree between the Parties. The absence of sampling or testing
10  requirements by a regulatory agency shall not be considered a conflict
11  with regulatory agency requirements.

12  **d.**  The City shall create a link from the City's website to the CIWQS
13  SSO Public Reports' website and shall publicize this new link to customers
14  and members of the public. Additionally, the City shall publicize the 24-
15  hour, 7 days per week emergency hotline on the City's website.

16  **10.  Inflow and Infiltration Program:** The City will develop a program
17  designed to reduce inflow and infiltration ("I/I") in lieu of a sanitary sewer lateral
18  inspection/repair program where the City determines that such a program is
19  appropriate based on ground water levels.

20  **11.  Root Control Policy:** The City will prepare a written Integrated Pest
21  Management Program ("IPM") for Root control. The City will prepare its IPM
22  within one (1) year of the Effective Date. The policy will include consideration of
23  physical root removal and pipe linings prior to the application of root control
24  chemicals that are registered under FIFRA by US-EPA and the California
25  Department of Pesticide Regulation.

26  **12.  SSMP Updates:** The City's SSMP shall be kept current and properly
27  certified. All documents relating to the certification shall be provided on the City's
28  Department of Public Works' website.

**13.** **Staff Training:** The City will continue to comply with all training, reporting, and response actions set forth in the State and Federal permits and its SSMP.

**14.** **Dry Weather Sampling of City Outfalls:** The City shall participate in the RWQCB-LA approved Coordinated Integrated Monitoring Program (CIMP) for the Upper Los Angeles River Watershed Management Group ("ULARWMAG"), pursuant to attachment E, Part IV.B of the RWQCB MS4 Permit R4-2012-0175.

## IV. MITIGATION PAYMENT, ATTORNEYS FEES & COSTS

**15.** The City shall make the following mitigation payment and reimbursement of attorneys' fees and costs:

    **a.** **Mitigation Payment.** In recognition of the good faith efforts by Burbank to comply with all aspects of the Statewide WDR and BWRP NPDES Permit, and in lieu of payment by Burbank of any penalties, which may have been assessed in this action if it had been adjudicated adverse to Burbank, the Parties agree that Burbank will pay the sum of twenty-five thousand dollars ($25,000.00) to the Council for Watershed Health for the sole purpose of Arundo eradication in the Los Angeles River watershed (see, https://www.watershedhealth.org/arundo) (the "Mitigation Payment"). Payment shall be mailed via certified mail or overnight delivery to: Council for Watershed Health 177 E. Colorado Blvd, Suite 200 Pasadena, CA 91105. Payment shall be made by Burbank to the Council for Watershed Health within forty-five (45) business days after the Effective Date. Burbank shall provide a copy to River Watch with any correspondence and a copy of the check sent to the Council for Watershed Health. The Council for Watershed Health shall provide notice to the Parties within thirty (30) days after the funds are utilized by the Council for Watershed Health.

    **b.** **Reimbursement of Fees and Costs.** Burbank shall reimburse River Watch in the amount of eighty-five thousand dollars ($85, 000.00) to help

defray River Watch's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the BWRP and the Collection System related to this Consent Decree, bringing these matters to Burbank's attention, ensuring compliance, and negotiating a resolution of this action in the public interest. Burbank shall tender said payment, payable to "California River Watch," within thirty (30) days after the Effective Date.

## V.    COMMITMENTS OF CALIFORNIA RIVER WATCH

**16.**    **Submission of Consent Decree to DOJ.** Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, River Watch shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5. The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree within twenty (20) business days to meet and confer to attempt to resolve the issues raised by DOJ.

## VI.    WAIVER, RELEASES & COVENANTS NOT TO SUE

**17.**    **Releases.** In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from River Watch's allegations and claims as set forth in the Notice Letters and Complaint up to and including the Termination Date of this Consent Decree.

**18.**    **Waiver.** The Parties acknowledge that they are familiar with section 1542 of

the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the Notice Letters and Complaint and allegations and claims that could have been brought under Section 505(a) of the Act, 33 U.S.C. § 1365(a), up to and including the Termination Date of this Consent Decree.

**19.     No Admission.** The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and Burbank expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Burbank of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

**20.     Covenant Not to Sue.**

    **a.**     For a period of ten (10) years from the Effective Date of this Consent Decree, CRW agrees that neither CRW, its officers, executive staff, members of its governing board, nor any organization under the control of CRW, its officers, executive staff, members of its governing board, will serve any Notice of Violations and Intent to Sue or file any lawsuit against the City seeking relief for alleged violations of the CWA with regard to the City's BWRP and Collection System associated with unpermitted discharges or other violations of the Clean Water Act, or RCRA (42 U.S.C. § 6901 et

seq.), or any similar state statutes and/or regulations, including the Porter Cologne Water Quality Control Act (Cal. Water Code, § 13000 et seq.), nor will CRW initiate or support such lawsuits against the City brought by other groups or individuals by providing financial assistance, personnel time, or any other affirmative actions.

**b.** For the duration of this Consent Decree, CRW agrees to submit any claims against the City seeking relief for alleged violations of the Clean Water Act or RCRA, or any similar state statutes and/or regulations, for resolution under the dispute resolution process set forth in Section VI below.

## VII. BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

**21.** **Dispute Resolution.** If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this paragraph. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable CWA and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court. The Court shall award relief limited to

compliance orders and awards of attorneys' fees and costs, subject to proof.

**22.   Force Majeure.** No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes, but is not limited to, any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals, or permits from, any governmental agency or private party; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

> **a.**   If Burbank claims impossibility, it will notify River Watch in writing within twenty (20) business days after the date that Burbank discovers the event or circumstance that caused or would cause non-performance with the terms of this Consent Decree, or the date Burbank should have known of the event or circumstance by the exercise of due diligence. The notice must describe the reason for the non-performance and specifically refer to this section of this Consent Decree. The notice must describe the anticipated

length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by Burbank to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. Burbank will adopt all reasonable measures to avoid and minimize such non-performance. The Settling Parties will meet and confer in good faith concerning the non-performance and, if the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of Burbank, due to circumstances beyond the control of Burbank that could not have been reasonably foreseen and prevented by the exercise of due diligence by Burbank, new performance deadlines will be established.

**b.** If River Watch disagrees with Burbank's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party may invoke the dispute resolution process described in Paragraph 21 of this Consent Decree. In such proceeding, Burbank will bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances. If circumstances outside of Burbank or its agent's control result in changes to Burbank's budget that delay implementation of Burbank's duties pursuant to this Consent Decree, the Term of the Consent Decree shall extend day-for-day until the completion of such delayed duties.

## VIII. MISCELLANEOUS PROVISIONS

**23. Effective Date.** The Effective Date of this Consent Decree shall be ten (10) business days after the entry of this Consent Decree by the Court and becomes a final enforceable order.

**24. Term of Consent Decree.** Subject to Paragraph 21, above, this Consent Decree shall terminate ten (10) years after the Effective Date, through the

---

[PROPOSED] CONSENT DECREE & ORDER          2:19-cv-07110-SVW-PJW

conclusion of any proceeding to enforce this Consent Decree initiated prior to the Termination Date, or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the later occurrence.

**25.** **Execution in Counterparts.** The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

**26.** **Facsimile Signatures.** The Settling Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

**27.** **Construction.** The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

**28.** **Authority to Sign.** The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood, and agreed to all of the terms and conditions of this Consent Decree.

**29.** **Integrated Consent Decree.** All Consent Decrees, covenants, representations, and warranties, express or implied, oral, or written, of the Settling Parties concerning the subject matter of this Consent Decree are contained herein.

**30.** **Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**31.** **Choice of Law.** This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

**32.** **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Settling Parties with and upon advice of counsel.

**33.     Negotiated Consent Decree.** The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

**34.     Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Settling Parties.

**35.     Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns.

**36.     Mailing of Documents to River Watch/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to River Watch pursuant to this Consent Decree shall, to the extent feasible, be sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

**California River Watch:**

Jack Silver, Esq.
Law Office of Jack Silver
708 Gravenstein Highway North, #407
Sebastopol, CA 95472
Tel: (707) 528-8175
Email: lhm28843@sbcglobal.net

Unless requested otherwise by Burbank, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Burbank pursuant to this Consent Decree shall, to the extent feasible, be provided

by electronic mail transmission to the e-mail addresses listed below or, if electronic

mail transmission is not feasible, by certified U.S. Mail with return receipt, or by

hand delivery to the addresses below:

**Burbank:**

Marnell Gibson, Public Works Director
City of Burbank Public Works Department
150 N. Third Street – P.O. Box 6459
Burbank, CA 91510-6459
Email: MAGibson@burbankca.gov

Steve Walker, Assistant Public Works Director
City of Burbank Public Works Department
150 N. Third Street – P.O. Box 6459
Burbank, CA 91510-6459
Email: SWalker@burbankca.gov

With copies sent to:
Amelia Ann Albano, City Attorney
275 E. Olive Avenue
Burbank, CA 91502
Email: AAlbano@burbankca.gov

Chris Chwang, Senior Deputy City Attorney
275 E. Olive Avenue
Burbank, CA 91502
Email: CChwang@burbankca.gov

S. Wayne Rosenbaum
Environmental Law Group
225 Broadway, Suite 1900
San Diego, CA 92101
E-mail: swr@envirolawyer.com

Notifications of communications shall be deemed submitted on the date that they

are emailed, or three (3) business days after postmarked and sent by first-class

mail, or one (1) business day after deposited with an overnight mail/delivery

1    service. Any changes of address or addressees shall be communicated in the
2    manner described above for giving notices.

3    **37.**    If for any reason the DOJ or the Court should decline to approve this
4    Consent Decree in the form presented, the Settling Parties shall use their best
5    efforts to work together to modify the Consent Decree within thirty (30) business
6    days after being notified so that it is acceptable to the DOJ or the Court. If the
7    Settling Parties are unable to modify this Consent Decree in a mutually acceptable
8    manner that is also acceptable to the Court, this Consent Decree shall immediately
9    be null and void as well as inadmissible as a settlement communication under
10    Federal Rule of Evidence 408 and California Evidence Code section 1152.

11    **38.**    The Settling Parties hereto enter into this Consent Decree, Order and Final
12    Judgment and submit it to the Court for its approval and entry as a final judgment.

13

14    Approved as to content:

15

16    **CALIFORNIA RIVER WATCH**      **CITY OF BURBANK**

17

18    Date:_____, 2019    Date: _Aug. 21_____, 2019

19

20

21    _____

22    **Larry Hanson**      **Marnell Gibson**

23    Board President      Public Works Director

24

25    /

26    /

27    ///

28

service. Any changes of address or addressees shall be communicated in the
manner described above for giving notices.

**37.** If for any reason the DOJ or the Court should decline to approve this
Consent Decree in the form presented, the Settling Parties shall use their best
efforts to work together to modify the Consent Decree within thirty (30) business
days after being notified so that it is acceptable to the DOJ or the Court. If the
Settling Parties are unable to modify this Consent Decree in a mutually acceptable
manner that is also acceptable to the Court, this Consent Decree shall immediately
be null and void as well as inadmissible as a settlement communication under
Federal Rule of Evidence 408 and California Evidence Code section 1152.

**38.** The Settling Parties hereto enter into this Consent Decree, Order and Final
Judgment and submit it to the Court for its approval and entry as a final judgment.

Approved as to content:

**CALIFORNIA RIVER WATCH**          **CITY OF BURBANK**

Date: _8/22/2019_, 2019          Date: _Aug. 21_, 2019

_____          _____
**Larry Hanson**                        **Marnell Gibson**
Board President                    Public Works Director

/
/
///

_____

Approved as to form:

**LAW OFFICE OF JACK SILVER**          **CITY OF BURBANK**

Date:_____, 2019          Date:___August   21___, 2019

_____          _____
**Jack Silver, Esq.**                          Christopher Chueng for
Attorney for California River Watch          **Amelia Ann Albano, Esq.**
                                                      City Attorney

**LAW OFFICE OF DAVID J**          **ENVIRONMENTAL LAW**
**WEINSOFF**                                **GROUP, LLP**

Date:_____, 2019          Date:___August 21___, 2019

_____          _____
**David J. Weinsoff, Esq.**                  **S. Wayne Rosenbaum, Esq.**
Attorney for California River Watch          Attorney for City of Burbank

**IT IS SO ORDERED**

Date:_____

_____
United States Magistrate Judge
Central District of California

[PROPOSED] CONSENT DECREE & ORDER          2:19-cv-07110-SVW-PJW

Approved as to form:

**LAW OFFICE OF JACK SILVER**          **CITY OF BURBANK**

Date: _Aug. 21, 2019_, 2019          Date: _August 21_, 2019

_[signature]_                          _[signature]_

                                       Christopher Chuang for
**Jack Silver, Esq.**                  **Amelia Ann Albano, Esq.**

Attorney for California River Watch     City Attorney

**LAW OFFICE OF DAVID J**              **ENVIRONMENTAL LAW**
**WEINSOFF**                           **GROUP, LLP**

Date: _Aug. 21_, 2019                  Date: _August 21_, 2019

_[signature]_                          _[signature]_

**David J. Weinsoff, Esq.**            **S. Wayne Rosenbaum, Esq.**

Attorney for California River Watch     Attorney for City of Burbank

**IT IS SO ORDERED**

Date: _10/15/19_

_[signature]_
                        District
United States Magistrate Judge

Central District of California

[PROPOSED] CONSENT DECREE & ORDER          2:19-cv-07110-SVW-PJW

22



# EXHIBIT A



# Law Office of Jack Silver

708 Gravenstein Hwy. North, # 407   Sebastopol, CA 95472-2808
Phone 707-528-8175  Email:  JSilverEnvironmental@gmail.com

**Via Certified Mail –**
**Return Receipt Requested**

June 13, 2018

Mr. Ron Davis, City Manager
Members of the City Council
City of Burbank
Burbank City Hall
275 East Olive Avenue
Burbank, CA 91510

Head of Agency/On-site Plant Manager
Burbank Water Reclamation Plant
740 N. Lake Street
Burbank, CA 91502

Ms. Marnell Gibson, Public Works Director
Public Works Department
150 North Third Street
Burbank, CA 91502

Ms. Dominique Demessence, CEO
Suez Water Environmental Services, Inc.
200 First State Boulevard
Wilmington, DE 19804

**Re:    Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act
(Clean Water Act)**

**STATUTORY NOTICE**

This Notice is provided on behalf of California River Watch ("River Watch") in regard to violations of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1251 et seq., that River Watch alleges are occurring through the ownership and/or operation of the City of Burbank's Water Reclamation Plant ("Plant") and associated sewer collection system.

River Watch hereby places the City of Burbank ("the City"), as owner of the Plant, its associated collection system, and outfalls, and Suez Water Environmental Services, Inc., ("Suez") as operator of the Plant, on notice that following the expiration of sixty (60) days from the date of this Notice, River Watch will be entitled under CWA § 505(a), 33 U.S.C. § 1365(a), to bring suit in the U.S. District Court against the City and Suez for continuing violations of an effluent standard or limitation pursuant to CWA § 301(a), 33 U.S.C. § 1311(a), and the Regional Water Quality Control Board, Los Angeles Region, Water Quality Control Plan ("Basin Plan"), as the result of violations of the City's National Pollution Discharge Elimination System ("NPDES") Permit.

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C. § 1342, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition such that violation of a permit limit places a discharger in violation of the CWA. River Watch alleges the City and Suez are in violation of the CWA by violating the terms of the City's NPDES permit.

The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the Environmental Protection Agency ("EPA") to a state or to a regional regulatory agency provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* 33 U.S.C. § 1342(b)). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board ("SWRCB") and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating the operations of the City and Suez in the region at issue in this Notice is the Regional Water Quality Control Board, Los Angeles Region ("RWQCB-LA").

While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of the statute's permitting requirements relating to effluent standards or limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365). River Watch is exercising such citizen enforcement to enforce compliance by the City and Suez with the CWA.

**NOTICE REQUIREMENTS**

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

**1.      The Specified Standard, Limitation, or Order Alleged to Have Been Violated**

The order violated is, SWRCB Order No. R4-2012-0059, NPDES No. CA0055531, superseded by SWRCB Order No. R4-2017-0064 effective on May 1, 2017.  River Watch has identified specific violations of the City's NPDES permit including raw sewage discharges and failure to either comply with or provide evidence that the City and Suez have complied with all the terms of this NPDES permit.

2.      **The Activity Alleged to Constitute a Violation**

River Watch contends that from June 13, 2013 through June 13, 2018, the City and Suez have has violated the Act as described in this Notice. River Watch contends these violations are continuing or have a likelihood of occurring in the future. The location or locations of the various violations alleged in this Notice are identified in records created and/or maintained by or for the City which relate to the ownership and operation of the Plant, associated sewer collection system, and outfalls as described in this Notice.

A.      Sanitary Sewer Overflows, Inadequate Reporting, and Failure to Mitigate Impacts

I.      Sanitary Sewer Overflow Occurrences

Sanitary Sewer Overflows ("SSOs"), in which untreated sewage is discharged above ground from the collection system prior to reaching the Plant, are alleged to have occurred both on the dates identified in California Integrated Water Quality System ("CIWQS") Interactive Public SSO Reports and on the dates when no reports were filed with CIWQS by the City or Suez, all in violation of the CWA.

The City's aging sewer collection system has historically experienced high inflow and infiltration ("I/I") during wet weather. Structural defects which allow I/I into the sewer lines result in a buildup of pressure, causing SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains which are connected to adjacent surface waters including the Burbank Western Channel and the Los Angeles River. All of the waterways lead to the Pacific Ocean, and all are waters of the United States.

A review of the CIWQS Spill Public Report – Summary Page, identifies the "Total Number of SSO locations" as 78, with 187,746 "Total Vol. of SSOs (gal)" discharged into the environment. Of this total volume, 94,167 gallons or just 50% are reported as being recovered while the City admits at least 58,791 gallons, or approximately 31% of the total, reached a surface water. This discharge poses both a nuisance pursuant to California Water Code § 13050(m) and an imminent and substantial endangerment to health and the environment.

A review of the CIWQS SSO Reporting Program Database specifically identifies 5 recent SSOs reported as having reached a water of the United States, identified by Event ID numbers 827055, 823882, 823548, 814489, and 805790. All of the reported violations lack detailed information of the effects and explanation of spill. Included in the 5 reported SSOs are the following incidents:

•       August 04, 2016 (Event ID# 827055) – an SSO estimated at 380 gallons occurred at 536 East University (Coordinates 34.19491 -118.31698). The cause of the spill was root intrusion. Of this amount, 300 gallons is reported as having been recovered, 330 gallons as reaching land, while

50 gallons are reported as reaching the Burbank Western Channel. For item "36 – Health Warnings posted" the City reports "No." For item "41 – Explanation of water quality samples analyzed for" the City, contradicting its report, states "Due to the limited amount of flow, the sewer spill did not reach receiving waters and was contained in the storm drain system."

- April 14, 2016 (Event ID # 823882) – an SSO estimated at 4,684 gallons occurred at Beachwood and Riverside (Coordinates 34.15761 -118.31597). The City reports 4,684 gallons reached a surface water. The cause of the spill was a power outage due to winds. For item "36 – Health warnings posted," the City reported "No."

- April 27, 2014 (Event ID # 805790) – an SSO estimated at 54,344 gallons occurred in the 400 block of North Beachwood Drive (Coordinates 34.174167 -118.323889). The cause of the spill is reported as an 18-inch force main rupture. Of the total estimated volume, 34,275 gallons are reported as reaching land, and 20,069 gallons are reported as reaching the Los Angeles River. For item "36 – Health warnings posted" the City reports "No."

All of the above-identified discharges are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as discharges of a pollutant (sewage) from a point source (sewer collection system) to a water of the United States without complying with any other sections of the Act. Further, these alleged discharges are violations of the City's NPDES Permit, which states in Section III. Discharge Prohibitions:

A.   Discharge of wastewater at a location different from that described in this Order is prohibited.

B.   The bypass or overflow of untreated wastewater or wastes to surface waters or surface water drainage courses is prohibited, except as allowed in Standard Provision I.G. of Attachment D, Standard Provisions...

D.   The Permittee shall not cause degradation of any water supply, except as consistent with State Water Board Resolution No. 68-16.

River Watch contends these violations are continuing in nature or have a likelihood of occurring in the future.

ii.    Inadequate Reporting of Discharges

a.    Incomplete and Inaccurate SSO Reporting

Full and complete reporting of SSOs is essential to gauging their impact upon public health and the environment. The City's SSO Reports, which should reveal critical details about each of these SSOs (including which SSOs reach which specific surface water), lack responses to specific questions that would present sufficient information to accurately assess and ensure these violations would not recur.

In addition, River Watch's expert believes many of the SSOs reported as not reaching a surface water did in fact reach surface waters, and those reported as reaching surface waters did so in greater volume than stated. River Watch's expert also believes that a careful reading of the time when the SSO began, the time the City or Suez received notification of the SSO, the time of their response, and the time at which the SSO ended, appear as unlikely estimations. For example:

- October 14, 2016 (Event ID #823882) – the spill start time is reported as 11:15 pm, agency notification time is reported as 1:45 am the following day, operator arrival time as 2:10 am, and spill end time as 1:45 am. The report filed asserts the spill ended upon notification. The estimated total volume of spill is 4,684 gallons, all of which are reported as reaching the Los Angeles River.

- March 30, 2016 (Event ID #823548) – the spill start time is reported as 8:36 am, agency notification time is reported as 8:43 am, while the operator arrival time is reported as 8:47 am (4 minutes after notification). The spill end time is reported as 9:04 am. The estimated total volume of spill is 2,100 gallons, 500 of which are reported as recovered, while 500 gallons are reported as reaching land, and 1,600 as having reached the Burbank Western Channel.

- April 08, 2015 (Event ID #814489) – the spill start time and agency notification time are both reported as 8:07 am. The operator arrival time is reported as 8:21 am, and spill end time is reported as 8:22 am (1 minute after arrival). The estimated total volume of the spill, recovered amount, and amount having reached land are all reported as 1,734 gallons.

Given the inconsistent accuracy of the times and intervals provided in these reports it is difficult to consider the stated volumes as accurate. Without correctly reporting the spill start and notification times, and by inaccurately reporting the operator arrival time and spill end time, there is a danger that the duration and volume of a spill will be underestimated.

      b.    <u>Failure to Warn</u>

There is no indication that the City or Suez post warning signs for any of the SSOs that presumably reach a surface water. River Watch contends the City and Suez are understating the significance of the impacts of their CWA violations by failing to post health warning signs for any SSOs which pose an imminent and substantial endangerment to health or the environment regardless of location.

      iii.    <u>Failure to Mitigate Impacts</u>

River Watch contends the City and Suez fail to adequately mitigate the impacts of these SSOs. The City is a permittee under the Statewide General Requirements for Sanitary Sewer Systems, Waste

Discharge Requirements Order No. 2006-0003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems. The Statewide WDR requires the City and Suez to take all feasible steps, and perform necessary remedial actions following the occurrence of an SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible. Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site.

A critical remedial measure is the performance of adequate sampling to determine the nature and impact of the release. As the City and Suez are inconsistently underestimating SSOs which reach surface waters, River Watch contends they are not conducting samples on many SSOs as required by the Statewide WDR.

The EPA's "Report to Congress on the Impacts of SSOs" identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. Numerous biological habitat areas exist within areas of the SSOs. Neighboring waterways include sensitive areas for the American White Pelican, Double Crested Cormorant, Osprey, Northern Harrier, Sharp-shinned Hawk, Merlin, California Gull, Vaux's Swift, Loggerhead Shrike, Yellow Warble, Yellow-breasted Chat, Tri-colored Blackbird, Least Bittern, White-faced Ibis, Golden Eagle, Prairie Falcon, Long-billed Curlew, Burrowing Owl, Vermillion Flycatcher, California Horned Lark, and Summer Tanager. There is no recent record of the City or Suez performing any analysis of the impact of SSOs on habitat of protected species under the ESA, nor any evaluation of the measures needed to restore water bodies containing biological habitat from the impacts of SSOs.

B.  Sewer Collection System Subsurface Discharges Caused by Underground Exfiltration

It is a well-established fact that exfiltration caused by structural defects in a sewer collection system results in discharges to adjacent surface waters either directly or via underground hydrological connections. Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent waters with untreated sewage.

River Watch contends untreated or partially treated sewage is discharged from the City's collection system either directly or via hydrologically-connected groundwater to surface waters including the Western Burbank Channel and the Los Angeles River, all which lead to the Pacific Ocean. Surface waters then become contaminated with pollutants, including human pathogens. Chronic failures in the collection system pose a substantial threat to public health. Evidence of exfiltration can also be supported by reviewing mass balance data, I/I data, video inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. Any exfiltration found is a violation of the City's NPDES permit and thus a violation of the CWA.

C.     Violations of Effluent Limitations and Monitoring Requirements

A review of the Self-Monitoring Reports ("SMRs") file by the City or Suez identifies the following violations of effluent limitations imposed under the City's NPDES Permit[1]:

i.     Reported Violations

a.     Violations of Effluent Violations

The SMRs identify **29** violations of Order No. R4-2012-0059, Section IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations Applicable to Discharge Point 002, as described below:

**3** - Effluent Limitations and Discharge Specifications Violations, A. Effluent Limitations, 1. Effluent Limitations Applicable to Discharge Point 002, a., Table 6. Effluent Limitations Applicable to Discharge Point 002:

(08/31/2016) Nitrate, Total (as N) Monthly Average limit is 7.2 mg/L and reported value was 7.5 mg/L at EFF-002. Violation ID: 1020300.

(06/30/2016) Nitrate, Total (as N) Monthly Average limit is 7.2 mg/L and reported value was 8.22 mg/L at EFF-002. Violation ID: 1014276.

(05/31/2016) Nitrate, Total (as N) Monthly Average limit is 7.2 mg/L and reported value was 7.72 mg/L at EFF-002. Violation ID: 1014285.

**2 -** Effluent Limitations and Discharge Specifications Violations, A. Effluent Limitations, 1. Effluent Limitations Applicable to Discharge Point 002, a., Table 6. Effluent Limitations Applicable to Discharge Point 002:

(12/31/2015) Bis (2-Ethylhexyl) Phthalate Monthly Average limit is 0.4 lb/day and reported value was 1.5 lb/day at EFF-002. Violation ID: 1014410.

_____

[1] The RWQCB issued Settlement Offer R4-2017-0036, relating to the its Administrative Civil Liability ("ACL") for Unauthorized Discharge of Effluent Violations/Reporting Violations. The ACL, imposing civil penalties, does not impose remediation requirements.  The violations identified in this Notice, therefore, include both those addressed in the ACL and those occurring prior to, on and after the date of the ACL.  Those violations are Violation ID: 1020300, 1014276, 1014285, 1014410, 1014409, 1014407, 1020298.

(12/31/2015) Bis (2-Ethylhexyl) Phthalate Monthly Average limit is 0.4 ug/L and reported value was 35 ug/L at EFF-002. Violation ID: 1014409.

**2 -** Effluent Limitations and Discharge Specifications Violations, A. Effluent Limitations, 1. Effluent Limitations Applicable to Discharge Point 002, a., Table 6. Effluent Limitations Applicable to Discharge Point 002:

(12/31/2015) Cyanide, Total (as CN) Monthly Average limit is 4.2 ug/L and reported value was 4.4 ug/L at EFF-002. Violation ID: 1014407.

(01/31/2015) Cyanide, Total (as CN) Monthly Average limit is 4.2 ug/L and reported value was 6 ug/L at EFF-002. Violation ID: 1020298.

**14 -** Effluent Limitations and Discharge Specifications Violations, A. Effluent Limitations, 2. Other Effluent Limitations Applicable to Discharge Point 002, "d. The waste discharged to water courses shall at all times be adequately disinfected. For the purpose of this requirement, the wastes shall be considered adequately disinfected if the median number of total coliform bacteria in the disinfected effluent does not exceed an MPN or CFU of 2.2 per 100 milliliters, and the number of total coliform bacteria does not exceed an MPN or CFU of 23 per 100 milliliters in more than one sample within any 30-Day period… The median value shall be determined from the bacteriological results of the last seven (7) days for which an analysis has been completed…":

(01/29/2015) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.5 MPN/100 ML at EFF-002. Violation ID: 1020297.

(05/03/2014) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.5 MPN/100 mL. Violation ID: 974900.

(05/02/2014) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.5 MPN/100 mL. Violation ID: 974899.

(05/01/2014) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.5 MPN/100 mL. Violation ID: 974897.

(11/27/2013) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.0 MPN/100 mL at EFF-002. Violation ID: 970041.

(11/27/2013) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.0 MPN/100 mL. Violation ID: 974742.

(11/26/2013) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.0 MPN/100 mL at EFF-002. Violation ID: 970040.

(11/26/2013) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.0 MPN/100 mL. Violation ID: 974740.

(11/25/2013) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.0 MPN/100 mL at EFF-002. Violation ID: 970039.

(11/25/2013) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.0 MPN/100 mL. Violation ID: 974738.

(11/25/2013) Total Coliform 7-Day Median limit is 2.2 MPN/100 mL and reported value was 4.0 MPN/100 mL. Violation ID: 974739.

(05/01/2014) Total Coliform Daily Maximum limit is 23.0 MPN/100 mL and reported value was 33.0 MPN/100 mL. Violation ID: 974896.

(04/28/2014) Total Coliform Daily Maximum limit is 23.0 MPN/100 mL and reported value was 33.0 MPN/100 mL. Violation ID: 974893.

(08/17/2013) Total Coliform Daily Maximum limit is 23.0 MPN/100 mL and reported value was 33.0 MPN/100 mL. Violation ID: 974737.

**4** – IV. Effluent Limitations and Discharge Specifications, A. Effluent Limitations, 1. Effluent Limitations Applicable to Discharge Point 002, Table 6:

(07/20/2014) Chlorine, Total Residual Daily Maximum limit is 0.1 mg/L and reported value was 0.45 mg/L. Violation ID: 970100.

(07/19/2014) Chlorine, Total Residual Daily Maximum limit is 0.1 % and reported value was 0.42 %. Violation ID: 980099.

(07/09/2014) Chlorine, Total Residual Daily Maximum limit is 0.1 mg/L and reported value was 0.34 mg/L. Violation ID: 980098.

(07/08/2014) Chlorine, Total Residual Daily Maximum limit is 0.1 mg/L and reported value was 0.19 mg/L. Violation ID: 980097.

**1** – C. Water Quality-Based Effluent Limitations (WQBELs), 2. Applicable Beneficial Uses and Water Quality Criteria and Objectives, b., xi. Coliform, (a). Effluent Limitations, "the number of total coliform bacteria must not exceed an MPN or CFU of 23 per 100 milliliters in more than one sample within any 30-day period."

(04/28/2014) Fecal Coliform Daily Minimum limit is 23.0 MPN/100 mL and reported value was 33.0 MPN/100 mL. Violation ID: 974894.

**3** - Additional reported violations of Chloride, Total Dissolved Solids, and Nitrite Plus Nitrate:

(01/15/2015) Chloride Daily maximum limit is 150.0 mg/L and reported value was 160.0 mg/L. Violation ID: 995545.

(07/22/2014) Total Dissolved Solids (TDS) Daily Maximum limit is 900.0 mg/L and reported value was 910.0 mg/L. Violation ID: 974901.

(05/01/2014) Nitrite Plus Nitrate (as N) Daily Maximum limit is 8.0 mg/L and reported value was 10.0 mg/L. Violation ID: 974895.

b.      Violations for Deficient Monitoring

The SMRs identify **1** violation of Order No. R4-2012-0059, Attachment E – Monitoring and Reporting Program, IV. Effluent Monitoring Requirements, A., Table 3. Effluent Monitoring:

(03/01/2014) Failed to report turbidity & flow for two days. Violation ID: 974892.

D.      Violations of Receiving Water Limitations and Impacts to Beneficial Uses

The aquatic environment of the Los Angeles River has numerous beneficial uses as set forth in the RWQCB-LA's Basin Plan including ground water recharge, water contact recreation, warm freshwater habitat, wildlife habitat, wetland habitat, marine habitat, and rare, threatened, or endangered species. The Los Angeles River, as well as its tributary the Western Burbank Channel, and the Pacific Ocean contain sensitive species and support important recreational value.

The Los Angeles River stretches approximately 51 miles from Canoga Park in the western end of the San Fernando Valley to Long Beach, southeast. Two channelized streams, Bell Creek and Arroyo Calabasas, come together in the Canoga Park section of Los Angeles at the head of the River which flows east past Burbank and curving around Griffith Park before flowing south to the Pacific Ocean at Long Beach.

The Los Angeles River watershed includes three regionally significant ecological areas: the Santa Monica Mountains, Verdugo Mountains, and Griffith Park. It is one of largest watersheds in the region at 824 square miles.

The Los Angeles River was channelized by the Army Corps of Engineers beginning in 1938 after several devastating floods, providing flood control for the growing City of Los Angeles and a consistent path for the course of the River. Fed primarily by rainwater, snow melt, and urban discharge, the River is one of the few perennial rivers in Southern California. The concrete channel helps limit absorption of water into the earth. There has been flow every month since recording of the stream flow began in 1929 (even the driest months). Although no native species of fish survived the channelization in 1938, the Los Angeles River is home to many fish species including common carp, largemouth bass, tilapia, Amazon Sailfin, channel catfish, fathead minnow, and crayfish.

Bird species of special concern relying on the Los River include the American White Pelican, Double Crested Cormorant, Osprey, red tailed hawk, Northern Harrier, Sharp-shinned Hawk, American coot, snowy, great egret, Merlin, great blue heron, California Gull, Vaux's Swift, Loggerhead Shrike, Yellow Warble, Yellow-breasted Chat, Tri-colored Blackbird, and the Mallard. More rarely seen species include the Least Bittern, White-faced Ibis, Golden Eagle, Prairie Falcon, Long-billed Curlew, Burrowing Owl, Vermillion Flycatcher, California Horned Lark, and Summer Tanager. Riparian habitat is impaired by degraded water quality resulting from increases in water temperature, sediment and nutrients, pesticides, and heavy metals.

Discharges in excess of receiving water and groundwater limitations reaching these waters cause pollution by unreasonably affecting the beneficial uses of these waters. The City's NPDES Permit specifically provides the following in Section V. Receiving Water Limitations:

"The discharge shall not cause the following in Burbank Western Channel, tributary to the Los Angeles River":...

7.    The wastes discharged shall not produce concentrations of substances in the receiving water that are toxic to or cause detrimental physiological responses in human, animal, or aquatic life.

8.    The wastes discharged shall not cause concentrations of contaminants to occur at levels that are harmful to human health in waters which are existing or potential sources of drinking water.

9.    The concentrations of toxic pollutants in the water column, sediments, or biota shall not adversely affect beneficial uses as a result of the wastes discharged...

13. The wastes discharged shall not cause the receiving waters to contain any substance in concentrations that adversely affect any designated beneficial use.

14. The wastes discharged shall not alter the natural taste, odor, or color of fish, shellfish, or other surface water resources used for human consumption."

River Watch finds insufficient information in the public record demonstrating the City or Suez have monitored for and complied with these receiving water standards, and is understandably concerned regarding the effects of discharges to beneficial uses of water applicable to the navigable waters identified in this Notice.

## 3. The Person or Persons Responsible for the Alleged Violation

The entities responsible for the alleged violations identified in this Notice are the City of Burbank, as owner of the Burbank Water Reclamation Plant, its associated collection system, and outfalls, and Suez Water Environmental Services, Inc., as operator of the Plant, as well as those of their employees responsible for compliance with the CWA and with any applicable state and federal regulations and permits. .

## 4. The Location of the Alleged Violation

The City is located in the eastern part of the San Fernando Valley in Los Angeles County, 12 miles northwest of downtown Los Angeles, bordered by the Verdugo Mountains on the north, Glendale to the east, North Hollywood and Toluca Lake to the west and Griffith Park to the south. According to the 2010 Census, the area of the City is 17.4 square miles, with a 2010 population of 103,340.

The City owns the Plant, a tertiary wastewater treatment plant, located at 740 N. Lake Street. The Plant currently receives a mixture of domestic and industrial wastewater. The Plant has a design capacity of 12.5 mgd and serves an estimated population of 105,000 people.

The Plant is part of the City's integrated network of facilities known as the North Outfall Sewer which includes four treatment plants. The upstream treatment plants (Tillman Water Reclamation Plant, Los Angeles-Glendale Water Reclamation Plant, and the Plant) discharge solids to the Hyperion Treatment Plant. This system also allows biosolids, solids, and excess flows to be diverted from the upstream plants to the Hyperion Wastewater Treatment Plant for treatment and disposal. All solids removed from the Plant's treatment process are returned untreated to the North Outfall Sewer for downstream treatment at the Hyperion Treatment Plant. Treatment at the Plant consists of barscreen removal of large solids, flow equalization, primary sedimentation, activated sludge biological treatment with nitrification and denitrification, secondary sedimentation with coagulation, single media and deep bed sand filtration, chlorination, chloramination, and dichlorination. The Plant discharges tertiary-treated

municipal wastewater to the Burbank Western Channel, a water of the United States, tributary to the Los Angeles River, above the Estuary.

**5.      Reasonable Range of Dates During Which the Alleged Activity Occurred**

The range of dates covered by this Notice is June 13, 2013 through June 13, 2018.  This Notice also includes all violations of the CWA by the City and Suez which occur during and after this Notice period up to and including the time of trial.

**6.      The Full Name, Address, and Telephone Number of the Person Giving Notice**

The entity giving notice is California River Watch, referred to throughout this notice as "River Watch," an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation duly organized under the laws of the State of California.  Its headquarters and main office are located in Sebastopol. Its mailing address is 290 S. Main Street, #817, Sebastopol, CA 95472.  River Watch is dedicated to protecting, enhancing, and helping to restore surface waters and groundwaters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.

River Watch has retained legal counsel with respect to the issues raised in this Notice. All communications should be directed to counsel identified below:

Jack Silver, Esq.                               David Weinsoff, Esq.
Law Office of Jack Silver                        Law Office of David J. Weinsoff
708 Gravenstein Hwy. No. # 407                   138 Ridgeway Avenue
Sebastopol, CA 95472                             Fairfax, CA 94930
Tel. (707) 528-8175                              Tel. (415) 460-9760
Email: jsilverenvironmental@gmail.com            Email: David@weinsofflaw.com

**RECOMMENDED REMEDIAL MEASURES**

River Watch looks forward to meeting with staff for the City and Suez to tailor remedial measures to the specific operation of the Plant, associated sewer collection system, and outfalls. In advance of that conversation, River Watch identifies the following issues for discussion that will advance compliance with the CWA and the Basin Plan, and help economize the time and effort the parties need to resolve their concerns:

•       Determination of the specific sewer collection system repairs required, and establishing deadlines for compliance;

- Implementation of an effective SSO reporting and response program (including revisions to the City's January, 2018 "SSO Emergency Response Plan");
- Provision of a lateral inspection and repair program;
- Ensuring the application of chemical root control complies with federal EPA or the RWQCB-LA as well as manufacturer and Cal-OSHA requirements;
- Keeping the Sewer System Management Plan up-to-date and properly certified; and,
- Promotion of staff training and education.

**CONCLUSION**

The violations set forth in this Notice effect the health and enjoyment of members of River Watch who reside and recreate in the affected community. Members of River Watch may use the affected watershed for recreation, fishing, hiking, photography, or nature walks. Their health, use and enjoyment of this natural resource is specifically impaired by the alleged violations of the CWA as set forth in this Notice.

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including a governmental instrumentality or agency, for violations of NPDES permit requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), 33 U.S.C. § 1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $53,484.00 per day/per violation for all violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 C.F.R. §§ 19.1 – 19.4.

River Watch believes this Notice sufficiently states grounds for filing suit in federal court under the "citizen suit" provisions of CWA to obtain the relief provided for under the law.

The CWA specifically provides a **60-day** "notice period" to promote resolution of disputes. River Watch strongly encourages the City and/or Suez to contact counsel for River Watch within **20 days** after receipt of this Notice to initiate a discussion regarding the allegations detailed herein. In the absence of productive discussions to resolve this dispute, River Watch will have cause to file a citizen's suit under CWA § 505(a) when the 60-day notice period ends.

Very truly yours,

Jack Silver

JS:jg

**Service List**

Scott Pruitt. Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue
N. W. Washington, D.C. 20460

Alexis Strauss, Acting Regional Administrator
U.S. Environmental Protection Agency
Pacific Southwest, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Amelia A. Albano
Attorney at Law
City of Burbank
275 East Olive Avenue
P.O. Box 6459
Burbank, CA 91510-6459

Suez Water Environmental Services, Inc.
c/o CSC – Lawyers Incorporating Service – Registered Agent
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

# Law Office of Jack Silver



708 Gravenstein Hwy. North, # 407   Sebastopol, CA 95472-2808
Phone 707-528-8175  Email:  JSilverEnvironmental@gmail.com

**Via Certified Mail –**
**Return Receipt Requested**

November 30, 2018

Mr. Ron Davis, City Manager
Members of the City Council
City of Burbank
Burbank City Hall
275 East Olive Avenue
Burbank, CA 91510

Ms. Marnell Gibson, Public Works Director
City of Burbank - Public Works Department
150 North Third Street
Burbank, CA 91502

**Re:     Supplemental Notice of Violations and Intent to File Suit Under the Federal Water**
**Pollution Control Act (Clean Water Act)**

**STATUTORY NOTICE**

  This Supplemental Notice is provided on behalf of California River Watch ("River Watch") in regard to violations of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1251 et seq., that River Watch alleges are occurring through the ownership and/or operation of the City of Burbank's sewer collection and outfall system.

  River Watch hereby places the City of Burbank ("the City"), as owner of its sewer collection system and outfalls, on notice that following the expiration of sixty (60) days from the date of this Supplemental Notice, River Watch will be entitled under CWA § 505(a), 33 U.S.C. § 1365(a), to bring suit in the U.S. District Court against the City for continuing violations of an effluent standard or limitation pursuant to CWA § 301(a), 33 U.S.C. § 1311(a), and the Regional Water Quality Control Board, Los Angeles Region, Water Quality Control Plan ("Basin Plan"), as the result of violations of the City's National Pollution Discharge Elimination System ("NPDES") Permit.

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C. § 1342, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition such that violation of a permit limit places a discharger in violation of the CWA. River Watch alleges the City is in violation of the CWA by violating the terms of the City's NPDES permit.

The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the Environmental Protection Agency ("EPA") to a state or to a regional regulatory agency provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* 33 U.S.C. § 1342(b)). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board ("SWRCB") and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permits and otherwise regulating the operations of the City in the region at issue in this Supplemental Notice is the Regional Water Quality Control Board, Los Angeles Region ("RWQCB-LA").

While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of the statute's permitting requirements relating to effluent standards or limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365). River Watch is exercising such citizen enforcement to enforce compliance by the City with the CWA.

**NOTICE REQUIREMENTS**

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

1.      **The Specified Standard, Limitation, or Order Alleged to Have Been Violated**

The orders alleged to be violated are as follows:

<u>NPDES Permit No. CA0055531</u> - *Waste Discharge Requirements for the City of Burbank Water Reclamation Plant* - River Watch identifies specific violations of the City's NPDES permit including raw sewage discharges. These alleged discharges are violations of the City's NPDES Permit, which states in Section III. Discharge Prohibitions:

A.  "Discharge of wastewater at a location different from that described in this Order is prohibited.

B.  The bypass or overflow of untreated wastewater or wastes to surface waters or surface water drainage courses is prohibited, except as allowed in Standard Provision I.G. of Attachment D, Standard Provisions.

C.  The Permittee shall not cause degradation of any water supply, except as consistent with State Water Board Resolution No. 68-16."

NPDES Permit No. CAS004001 - *Los Angeles County Municipal Separate Storm Sewer System (MS4) Permit ("MS4")*, governing the municipal discharges of storm water and non-storm water by the Los Angeles County Flood Control District, the County of Los Angeles, and 84 incorporated cities (including the City) within the coastal watersheds of Los Angeles County. The MS4 states in relevant part:

"Each Permittee shall, for the portion of the MS4 for which it is an owner or operator, prohibit non-storm water discharges through the MS4 to receiving waters [with specific exceptions]" (*see* Section III.A. "*Discharge Prohibitions*").

"Discharges from the MS4 that cause or contribute to the violation of receiving water limitations are prohibited"; and "Discharges from the MS4 of storm water, or non-storm water, for which a Permittee is responsible, shall not cause or contribute to a condition of nuisance" (*see* Section V.A.1. and 2. "*Receiving Water Limitations*").

2.      **The Activity Alleged to Constitute a Violation**

River Watch contends that from June 13, 2013 (the date of the initial Notice of Violations) through November 30, 2018 (the date of this Supplemental Notice), the City has violated the Act as described in this Supplemental Notice. River Watch contends these violations are continuing or have a likelihood of occurring in the future. The location or locations of the various violations alleged in this Supplemental Notice are identified in records created and/or maintained by or for the City which relate to the ownership and operation of sewer collection system and outfalls as described in this Supplemental Notice.

A.      Sanitary Sewer Overflows, Inadequate Reporting, and Failure to Mitigate Impacts

I.      Sanitary Sewer Overflow Occurrences

Sanitary Sewer Overflows ("SSOs"), in which untreated sewage is discharged above ground from the collection system prior to reaching the City's Water Reclamation Plant, are alleged to have occurred both on the dates identified in California Integrated Water Quality System ("CIWQS")

Interactive Public SSO Reports and on the dates when no reports were filed with CIWQS by the City, all in violation of the CWA.

The City's aging sewer collection system has historically experienced high inflow and infiltration ("I/I") during wet weather. Structural defects which allow I/I into the sewer lines result in a buildup of pressure, causing SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains which are connected to adjacent surface waters including the Burbank Western Channel and the Los Angeles River. All of the waterways lead to the Pacific Ocean, and all are waters of the United States.

A review of the CIWQS Spill Public Report – Summary Page, identifies the "Total Number of SSO locations" as 78, with 187,746 "Total Vol. of SSOs (gal)" discharged into the environment. Of this total volume, 94,167 gallons or just 50% are reported as being recovered while the City admits at least 58,791 gallons, or approximately 31% of the total, reached a surface water. This discharge poses both a nuisance pursuant to California Water Code § 13050(m) and an imminent and substantial endangerment to health and the environment.

A review of the CIWQS SSO Reporting Program Database specifically identifies 5 recent SSOs reported as having reached a water of the United States, identified by Event ID numbers 827055, 823882, 823548, 814489, and 805790. All of the reported violations lack detailed information of the effects and explanation of spill. <u>Examples</u> of the alleged violations included in the list of CIWQS-reported SSOs are:

August 04, 2016 (Event ID# 827055) – an SSO estimated at 380 gallons occurred at 536 East University (Coordinates 34.19491 -118.31698). The cause of the spill was root intrusion. Of this amount, 300 gallons are reported as having been recovered, 330 gallons as reaching land, while 50 gallons are reported as reaching the Burbank Western Channel. For item "36 – Health Warnings posted" the City reports "No." For item "41 – Explanation of water quality samples analyzed for" the City, contradicting its report, states "Due to the limited amount of flow, the sewer spill did not reach receiving waters and was contained in the storm drain system."

April 14, 2016 (Event ID # 823882) – an SSO estimated at 4,684 gallons occurred at Beachwood and Riverside (Coordinates 34.15761 -118.31597). The City reports 4,684 gallons reached a surface water. The cause of the spill was a power outage due to winds. For item "36 – Health warnings posted," the City reported "No."

April 27, 2014 (Event ID # 805790) – an SSO estimated at 54,344 gallons occurred in the 400 block of North Beachwood Drive (Coordinates 34.174167 -118.323889). The cause of the spill is reported as an 18-inch force main rupture. Of the total estimated volume, 34,275

gallons are reported as reaching land, and 20,069 gallons are reported as reaching the Los Angeles River. For item "36 – Health warnings posted" the City reports "No."

All of the above-identified discharges are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as discharges of a pollutant (sewage) from a point source (sewer collection system) to a water of the United States without complying with any other sections of the Act. Further, as stated above, these alleged discharges are violations of the City's NPDES Permit, Section III. Discharge Prohibitions. River Watch contends these violations are continuing in nature or have a likelihood of occurring in the future.

    ii.    <u>Inadequate Reporting of Discharges</u>

        a.    <u>Incomplete and Inaccurate SSO Reporting</u>

Full and complete reporting of SSOs is essential to gauging their impact upon public health and the environment. The City's SSO Reports, which should reveal critical details about each of these SSOs (including which SSOs reach which specific surface water), lack responses to specific questions that would present sufficient information to accurately assess and ensure these violations would not recur.

In addition, River Watch's expert believes many of the SSOs reported as not reaching a surface water did in fact reach surface waters, and those reported as reaching surface waters did so in greater volume than stated. River Watch's expert also believes that a careful reading of the time when the SSO began, the time the City received notification of the SSO, the time of its response, and the time at which the SSO ended, appear as unlikely estimations. <u>Examples</u> of the alleged violations included in this list of CIWQS-reported SSOs are:

<u>October 14, 2016 (Event ID #823882</u>) – the spill start time is reported as 11:15 pm, agency notification time is reported as 1:45 am the following day, operator arrival time as 2:10 am, and spill end time as 1:45 am. The report filed asserts the spill ended upon notification. The estimated total volume of spill is 4,684 gallons, all of which are reported as reaching the Los Angeles River.

<u>March 30, 2016 (Event ID #823548</u>) – the spill start time is reported as 8:36 am, agency notification time is reported as 8:43 am, while the operator arrival time is reported as 8:47 am. The spill end time is reported as 9:04 am. The estimated total volume of spill is 2,100 gallons, 500 of which are reported as recovered, while 500 gallons are reported as reaching land, and 1,600 are reported as having reached the Burbank Western Channel.

<u>April 08, 2015 (Event ID #814489)</u> – the spill start time and agency notification time are both reported as 8:07 am. The operator arrival time is reported as 8:21 am, and spill end time is reported as 8:22 am (1 minute after arrival). The estimated total volume of the spill, recovered amount, and amount having reached land are all reported as 1,734 gallons.

Given the inconsistent accuracy of the times and intervals provided in these reports, it is difficult to consider the stated volumes as accurate. Without correctly reporting the spill start and notification times, and by inaccurately reporting the operator arrival time and spill end time, there is a danger that the duration and volume of a spill will be underestimated.

       b.     <u>Failure to Warn</u>

There is no indication that the City posts warning signs for any SSOs that presumably reach a surface water. River Watch contends the City is understating the significance of the impacts of its CWA violations by failing to post health warning signs for any SSOs which pose an imminent and substantial endangerment to health or the environment regardless of location.

       iii.    <u>Failure to Mitigate Impacts</u>

River Watch contends the City fails to adequately mitigate the impacts of its SSOs. The City is a permittee under the *Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements* Order No. 2006-0003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems. The Statewide WDR requires the City to take all feasible steps and perform necessary remedial actions following the occurrence of an SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible. Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site.

A critical remedial measure is the performance of adequate sampling to determine the nature and impact of the release. As the City is inconsistently underestimating SSOs which reach surface waters, River Watch contends the City is not conducting samples on many SSOs as required by the Statewide WDR.

The EPA's "*Report to Congress on the Impacts and Control of CSOs and SSOs*" (U.S. EPA, Office of Water (2004)) identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. Numerous biological habitat areas exist within areas of the SSOs. Neighboring waterways include sensitive areas for the American White Pelican, Double Crested Cormorant, Osprey, Northern Harrier, Sharp-shinned Hawk, Merlin, California Gull, Vaux's Swift, Loggerhead Shrike, Yellow Warble, Yellow-breasted Chat, Tri-colored Blackbird, Least Bittern, White-faced

Ibis, Golden Eagle, Prairie Falcon, Long-billed Curlew, Burrowing Owl, Vermillion Flycatcher, California Horned Lark, and Summer Tanager. River Watch finds no recent record of the City performing any analysis of the impact of SSOs on the habitat of protected species under the ESA, nor any evaluation of the measures needed to restore water bodies containing designated as critical habitat from the impacts of SSOs.

B.    Failure to Eliminate Sewer Collection System Subsurface Discharges Caused by Underground Exfiltration

It is a well-established fact that exfiltration caused by structural defects in a sewer collection system results in discharges to adjacent surface waters either directly or via underground hydrological connections. Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent waters with untreated sewage.

River Watch contends untreated or partially treated sewage is discharged from the City's collection system either directly or via hydrologically-connected groundwater to surface waters including the Burbank Western Channel and the Los Angeles River, all which lead to the Pacific Ocean. Surface waters then become contaminated with pollutants, including human pathogens. Chronic failures in the collection system pose a substantial threat to public health. Evidence of exfiltration can also be supported by reviewing mass balance data, I/I data, video inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. Any exfiltration found is a violation of the City's NPDES permit and thus a violation of the CWA.

C.    Failure to Comply with the Municipal Separate Storm Sewer System (MS4) Stormwater Permit

The City's MS4 is a system of conveyances intended to carry stormwater. It is connected to storm drain pipes which discharge neighboring surface waters. However, SSOs bring sewage into the MS4 and in turn into waterways connected to, and downstream of, the MS4. River Watch contends the City fails to adequately comply with the discharge prohibitions of its MS4 Permit as stated above.

All SSOs which reach a storm drain or storm drain conveyance are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as they are discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States, without complying with any other sections of the Act.

River Watch contends these violations are continuing in nature or have a likelihood of occurring in the future. In addition, all of these discharges pose both a nuisance pursuant to California Water Code § 13050(m), and an imminent and substantial endangerment to human health and the environment.

D.    Failure to Eliminate Unpermitted Discharges

Multiple sources of pollution generated through activities in the City, vehicular traffic, and sewage and garbage, make their way to the City's system of storm drains connected to the Los Angeles River and the Burbank Western Channel. Results from recent sampling tests indicate non-stormwater discharges of pollutants from the City's outfalls exceed water quality standards. River Watch's ongoing investigation indicates a lack of any structural Best Management Practices in place at these outfalls to prevent maintenance waters from coming into contact with pollutant sources and/or water treatment measures to prevent contaminants from being discharged without treatment in or around the storm drains. A map of the City's outfalls and photographs of the discharges River Watch addresses in this Supplemental Notice are attached as **Exhibit A**.

Under EPA regulations, water quality standard based provisions are required in NPDES permits to protect the beneficial uses of water. 40 C.F.R. § 122.44(d). The RWQCB-LA has identified beneficial uses of the Los Angeles River region's waters and has established water quality standards for the Los Angeles basin. The beneficial uses of these waters (discussed here and below) include, among others, contact and non-contact recreation. The non-contact recreation use is defined as use of water for recreational activities involving proximity to water, but not normally involving contact where water ingestion would be reasonably possible such as picnicking, sunbathing, hiking, camping, boating, hunting, sightseeing, or aesthetic enjoyment in conjunction with those activities. Water quality considerations relevant to hiking, camping, boating, and activities related to nature studies, require protection of habitats and aesthetic features.

The Basin Plan includes a narrative toxicity standard which states that all waters shall be maintained free of toxic substances in concentrations that are lethal or that produce other detrimental responses in aquatic organisms. The Basin Plan includes a narrative oil and grease standard which states that waters shall not contain oils, greases, waxes, or other materials in concentrations that result in a visible film or coating on the surface of the water or on objects in the water, that cause nuisance, or otherwise adversely affect beneficial uses. The Basin Plan establishes Water Quality Objectives for toxic metals such as copper, nickel, and zinc.

The EPA adopted the National Toxics Rule on February 5, 1993 and the California Toxics Rule on May 18, 2000. When combined with the beneficial use designations in the Basin Plan, these Rules contain water quality standards applicable to the discharges of pollutants by the City identified in this Supplemental Notice. The SWRCB adopted the *Policy for Implementation of Toxics*

*Standards for Inland Surface Waters, Enclosed Bays, and Estuaries of California* on April 26, 2000, containing requirements for implementation of both the National Toxics Rule and California Toxics Rule.

E.    Impacts to Beneficial Uses From SSOs and Direct Discharges

The aquatic environment of the Los Angeles River has numerous beneficial uses as set forth in the RWQCB-LA's Basin Plan including groundwater recharge, water contact recreation, warm freshwater habitat, wildlife habitat, wetland habitat, marine habitat, and rare, threatened, or endangered species. The Los Angeles River, Burbank Western Channel, and Pacific Ocean contain sensitive species and support important recreational value.

The Los Angeles River stretches approximately 51 miles from Canoga Park in the western end of the San Fernando Valley to Long Beach, southeast. Two channelized streams, Bell Creek and Arroyo Calabasas, come together in the Canoga Park section of Los Angeles at the head of the River which flows east past Burbank and curves around Griffith Park before lowing south to the Pacific Ocean at Long Beach.

The Los Angeles River watershed includes 3 regionally significant ecological areas: the Santa Monica Mountains, Verdugo Mountains, and Griffith Park. It is one of largest watersheds in the region at 824 square miles.

The Los Angeles River was channelized by the Army Corps of Engineers beginning in 1938 after several devastating floods, providing flood control for the growing City of Los Angeles and a consistent path for the course of the River. Fed primarily by rainwater, snow melt, and urban discharge, the River is one of the few perennial rivers in Southern California. The concrete channel helps limit absorption of water into the earth. There has been flow every month since recording of the stream flow began in 1929, even the driest months. Although no native species of fish survived the channelization in 1938, the Los Angeles River is home to many fish species including common carp, largemouth bass, tilapia, Amazon Sailfin, channel catfish, fathead minnow, and crayfish.

Bird species of special concern relying on the Los Angeles River include the American White Pelican, Double Crested Cormorant, Osprey, red tailed hawk, Northern Harrier, Sharp-shinned Hawk, American coot, snowy, great egret, Merlin, great blue heron, California Gull, Vaux's Swift, Loggerhead Shrike, Yellow Warble, Yellow-breasted Chat, Tri-colored Blackbird, and the Mallard. More rarely seen species include the Least Bittern, White-faced Ibis, Golden Eagle, Prairie Falcon, Long-billed Curlew, Burrowing Owl, Vermillion Flycatcher, California Horned Lark, and Summer Tanager. Riparian habitat is impaired by degraded water quality resulting from increases in water temperature, sediment and nutrients, pesticides, and heavy metals.

### 3.    The Person or Persons Responsible for the Alleged Violation

The entity responsible for the alleged violations identified in this Supplemental Notice is the City of Burbank as well as those of its employees responsible for compliance with the CWA and with any applicable state and federal regulations and permits.

### 4.    The Location of the Alleged Violation

The violations alleged in this Supplemental Notice originate in the City and result in pollutants discharged by the City from its sewage collection system and outfalls (point sources within the City's jurisdiction) to the Los Angeles River and the Burbank Western Channel –both waters of the United States.

### 5.    Reasonable Range of Dates During Which the Alleged Activity Occurred

The range of dates covered by this Supplemental Notice is June 13, 2013 through November 30, 2018. This Supplemental Notice also includes all violations of the CWA by the City which occur during and after this Supplemental Notice period up to and including the time of trial.

### 6.    The Full Name, Address, and Telephone Number of the Person Giving Notice

The entity giving notice is California River Watch, referred to throughout this Supplemental Notice as "River Watch," an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation duly organized under the laws of the State of California. Its headquarters and main office are located in Sebastopol. Its mailing address is 290 South Main Street, #817, Sebastopol, CA 95472. River Watch is dedicated to protecting, enhancing, and helping to restore surface waters and groundwaters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.

River Watch has retained legal counsel with respect to the issues raised in this Supplemental Notice. All communications should be directed to counsel identified below:

| | |
|---|---|
| Jack Silver, Esq. | David Weinsoff, Esq. |
| Law Office of Jack Silver | Law Office of David J. Weinsoff |
| 708 Gravenstein Hwy. No. # 407 | 138 Ridgeway Avenue |
| Sebastopol, CA 95472 | Fairfax, CA 94930 |
| Tel. (707) 528-8175 | Tel. (415) 460-9760 |
| Email: jsilverenvironmental@gmail.com | Email: David@weinsofflaw.com |

**RECOMMENDED REMEDIAL MEASURES**

River Watch looks forward to continued conversations with staff for the City to tailor remedial measures for the City's sewer collection system and outfalls. In advance of these conversations, River Watch identifies the following issues for discussion that will advance compliance with the CWA and the Basin Plan, and help economize the time and effort the parties need to resolve their concerns:

1. Determination of the specific sewer collection system repairs required, and establishing deadlines for compliance;
2. Implementation of an effective SSO reporting and response program (including revisions to the City's January, 2018 "SSO Emergency Response Plan");
3. Provision of a lateral inspection and repair program;
4. Ensuring the application of chemical root control complies with federal EPA or the RWQCB-LA as well as manufacturer and Cal-OSHA requirements;
5. Keeping the Sewer System Management Plan up-to-date and properly certified; and,
6. Promotion of staff training and education.

**CONCLUSION**

The violations set forth in this Supplemental Notice effect the health and enjoyment of members of River Watch who reside and recreate in the affected community. Members of River Watch may use the affected watershed for recreation, fishing, hiking, photography, or nature walks. Their health, use and enjoyment of this natural resource is specifically impaired by the alleged violations of the CWA as set forth in this Supplemental Notice.

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including a governmental instrumentality or agency, for violations of NPDES permit requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), 33 U.S.C. § 1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $53,484.00 per day/per violation for all violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 C.F.R. §§ 19.1 – 19.4.

River Watch believes this Supplemental Notice sufficiently states grounds for filing suit in federal court under the "citizen suit" provisions of CWA to obtain the relief provided for under the law.

The CWA specifically provides a **60-day** "notice period" to promote resolution of disputes. River Watch strongly encourages the City to contact counsel for River Watch within **20 days** after receipt of this Supplemental Notice to initiate a discussion regarding the allegations detailed herein. In the absence of productive discussions to resolve this dispute, River Watch will have cause to file a citizen's suit under CWA § 505(a) when the 60-day notice period ends.

Very truly yours,

Jack Silver

JS:lhm

**Service List**

Andrew Wheeler, Acting Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue
N. W. Washington, D.C. 20460

Michael Stoker, Regional Administrator
U.S. Environmental Protection Agency
Pacific Southwest, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Amelia A. Albano
Attorney at Law
City of Burbank
275 East Olive Avenue
P.O. Box 6459
Burbank, CA 91510-6459



# EXHIBIT A

Google Maps    Burbank



Map data ©2018 Google    500 ft







